## Sandoe's Appeal.    Bard's Estate.

1. Where a widow elects not to take under a will, her substituted devises and bequests are a trust in her, for the benefit of the disappointed claimants to the amount of their interest therein.

2. A court of equity will sequester the benefit intended for the wife to secure compensation to those whom her election disappoints.

3. A testator directed his executors, should his son J. desire it, to buy him a farm of equal value to his mansion farm, and "if there should not be sufficient funds on hand," &c., to sell a house in H. He gave his son W. his mansion farm, subject to certain charges for testator's wife. He directed his executors to rent his tavern for his wife and after her death he gave it to his sons equally in fee. He devised to them also other real estate in fee and gave to his wife pecuniary legacies and other personal property. She elected to take under the intestate laws, and there was not enough personal estate to buy the farm for J. *Held*, that whatever deficiency there was after appropriating the funds mentioned, including the sequestered gifts to the widow, must be charged on W.'s farm, equality between J. and W. to be preserved.

May 3d 1870.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Appeal from the decree of the Orphans' Court of *Lancaster county*: No. 76, to May Term 1870.  In Michael Bard's Estate.

The decedent died on the 11th of May 1865, leaving a widow, three daughters and two sons, Jefferson S. Bard, aged then about twenty years, and William M. Bard, aged about thirteen years. John R. Sandoe was appointed guardian of William.

By the 3d clause of his will the testator directed that if his son Jefferson married or wished a farm for himself before William came of age, the executors should buy a farm for him of equal value with testator's mansion place, and pay for the same out of his estate, and if there should not be sufficient funds, his executor should sell his brick house and lot in New Holland, bought of S. K. Groff's assignee, &c.

By the 4th clause he gave his mansion place to William, "to pass into his hands" at twenty-one years of age, subject to certain charges for his wife.  In case William died before twenty-one, without leaving issue, he devised the mansion farm to Jefferson in fee.

By other clauses he gave pecuniary legacies to his three daughters.  He gave certain wood-lots to Jefferson and William equally.

By the 15th clause he directed his executors to rent his tavern and store property in New Holland during his wife's life.  In case his wife died before William came of age, it was to be rented till William came of age, and after William came of age and the widow's death, this property was to go to Jefferson and William in fee.

By the 10th clause he authorized his executors to sell his brick

house and lot in New Holland.　He divided the residue of his estate equally amongst all his children.

The widow elected not to take under the will, but took under the intestate laws.　The result was that, the assets of the estate were not sufficient to meet the provisions of the will.

The distribution of the estate was referred to auditors, who reported that all the legacies and devises should abate proportionably.　In order to determine the dividends they fixed a valuation on the real estate.　They reported that all the devises and bequests, exclusive of the widow's, amounted to $49,335.46; that the assets, including the land subject to her dower, amounted to $36.647.24, and that the dividend would be 74¼ per cent.; that the shares of Jefferson and William were equal under the will, that Jefferson had elected to take his portion in money, as he had the right to do, and that William, in personal property delivered to him, and the land devised to him, had received $4123.91 more than his dividend.　They directed, therefore, that he should pay that sum to the executors to enable them to make the distribution.　This report was confirmed by the Orphans' Court. From this decree of confirmation the daughters appealed to the Supreme Court.　That court reversed so much of the decree as related to the legacies to the daughters, and ordered the executors to pay them without abatement.　(See 8 P. F. Smith 393, where large extracts from the will are to be found.)　Sandoe, the guardian of William, then took this appeal from the remainder of the decree of the Orphans' Court.

He assigned for error, that the court erred—

1. In confirming the report of the auditors, and in charging the estate devised to William M. Bard with the sum of $4123.91.

2. In not awarding to William M. Bard all the real and personal estate given to him by the will of Michael Bard, deceased, in the character of specific devises and legacies free from all charges and deductions, except such as the law imposed upon each in favor of the superior rights of the widow.

3. In not deciding that in the distribution of this estate the general legacies must abate in full before the specific legacies, and specific devises can be called upon for abatement.

*W. W. Brown*, for appellant.

*A. M. Frantz*, for appellee.

The opinion of the court was delivered, October 20th 1870, by Read, J.—The will of Michael Bard was before this court, in 8 P. F. Smith 393, when the three legacies to three married daughters of the testator were directed to be first paid, in preference to any appropriation of the personal estate, to buy a farm for

Jefferson. So far as this went, the report of the auditors was set aside. The present appeal of the guardian of the minor William, necessarily brings up the consideration of the remainder of the report of the auditors, with which we shall now proceed to deal.

The widow, by her election not to take under the will of her husband, took one-third of the personal estate of the decedent and her dower at common law in the real estate, and the three legacies to the three married daughters were under our decision paid in full out of the personal estate. This leaves subject to the will the remaining personal estate and the real estate subject to the widow's dower. The accounts not being before us, we are unable to say what is the result produced by this state of things. One thing is however clear, that the auditors adopted an entirely erroneous mode of settlement, in making all the devises and bequests abate *pro rata*, and of course their whole plan of distribution falls to the ground.

The rule in equity treats the substituted devises and bequests to the wife, as a trust in her for the benefit of the disappointed claimants, to the amount of their interest therein ; and the court will assume jurisdiction to sequester the benefit intended for the refusing wife, in order to secure compensation to those whom her election disappoints.

This reaches all bequests and provisions for the widow in the second, fourth and sixth items of the will. The executors, if Jefferson wishes it, are directed in the third item to purchase for him a farm, but it is evident that the remaining personalty will not be sufficient for this purpose, and that the executors will be obliged to sell the brick house and lot in New Holland mentioned in the third item.

This construction will leave William whatever he is entitled to under the terms of the will, and appropriates to the use of Jefferson the remainder of the personalty, the proceeds of the brick house and lot, and the sequestered benefits intended for the widow.

The legacy to Jefferson is in these words : " Third, I direct that if my son Jefferson gets married or wishes to farm for himself, before William is of age, my executors shall buy a farm for him some place in the neighborhood, which in the whole shall be about equal in value to my mansion place, and get the title for same made from the vendor to my said son Jefferson, his heirs and assigns, and pay the same out of my estate."

This language leaves no doubt that the testator looked upon Jefferson with the same favor that he did William, and intended to give them equal shares of his property. The further provision in the fourth item, giving the said mansion farm to his son Jefferson in case of the death of William "before he is twenty-one

years old and without leaving issue" confirms this view to its fullest extent.

This legacy is to be paid out of the estate, and whatever deficiency there may be after the application of all the funds enumerated in the foregoing part of the opinion, must be charged upon and paid out of the mansion farm devised to William, taking care however to preserve the equality of value between the two brothers. In this shape and in this view the Orphans' Court is the proper tribunal, and possessing equity powers can dispose of all the questions raised in this case.

The effect of this is to reverse so much of the decree of the Orphans' Court as was left unreversed by the decree of this court, and to enter a decree in conformity with this opinion:

> And now, October 20th 1870, it is ordered, adjudged and decreed, that so much of the decree of the Orphans' Court as remained unreversed by the former decrees of this court be reversed and it is hereby ordered that all the benefits intended for the refusing wife be sequestered for the compensation of Jefferson. That the brick house and lot in New Holland be sold, and after applying the same with the personalty to the purchase of a farm for Jefferson agreeably to the directions of the will, and whatever may be the deficiency for this purpose is to be raised out of William's mansion farm, taking care however to preserve the equality of value between the two brothers. And it is further ordered that the Orphans' Court carry this decree into full effect, and that the record be remitted for that purpose. The costs of this appeal to be paid out of the estate.