## Coover's Appeal.   Backenstose's Estate.

74   143
138   219

74   143
141   209
74   143
151   589

74       143
38SC    500

1. A testator gave to his wife all his real and personal estate, provided that so much of the personal estate as she should not wish to use should be sold and the proceeds paid to her, and so much of the income of the realty as should be necessary for her support paid to her, and the remainder put at interest till her death; these bequests to be only during her widowhood, the executors to sell his real estate except his mansion, which was to be occupied by his widow during widowhood, at their discretion, and sell the undisposed personal and real estate within one year after his wife's death, and divide the whole into ten shares, ' one share to be paid to Susanna Davis or to her lawful issue," and so as to the other shares. " In case any of the legatees should die before the legacy becomes payable without lawful issue," the share to go to the other legatees. The widow elected to take against the will and received her interest under the intestate laws. *Held*, that the legatees were entitled to receive their legacies, although the widow was living.

2. An estate given to a trustee endures no longer than the thing to be secured by the trust demands. Per PEARSON, P. J., approved by the Supreme Court.

3. If the legacies were contingent upon the death of the widow her renunciation was the same as to determining the contingency as her death. *Id.*

May 21st 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Appeal from the Orphans' Court of *Lebanon county:* Of May Term 1873, No. 86.

The proceedings in this case were for the distribution of the estate of Henry Backenstose, deceased.

The decedent died on the 1st of February 1864, leaving a widow, Margaret, but no children or other descendants.

He left a will and codicil, both dated May 15th 1852, and proved December 15th 1864, when letters testamentary were granted to Joseph Coover and John Uhrich, the executors named in it.   The following, amongst others, are provisions of the will:—

" Item 2. I give and bequeath unto my dear wife Margaret all and every of my real, personal and mixed estate, be the same in or out of the state of Pennsylvania, the same to be first appraised, and the appraisement thereof be filed in the register's office at Lebanon: Provided, however, that so much of my personal estate as she may not wish to use, shall be sold at public sale, and the proceeds thereof to be paid unto her; and the proceeds or income of my real estate shall be paid to her annually, during her natural life, by my hereinafter-named executors, who shall be the guardians for letting or leasing such of my real estate as she may not choose to occupy herself: Provided, however, that my hereinafter-named executors shall only pay unto her annually so much of the proceeds of the incomes and rents of said real estate as may be sufficient and necessary for her comfortable support and livelihood, and the

[Coover's Appeal.]

balance (if any there should be) to be put at interest until the time of the decease of my said wife Margaret.

"Item 3. Provided, all times, that the foregoing bequests by me made unto my wife Margaret shall only be a bequest unto her in case she remains my widow, and so long as she remains my widow and no longer; and be in full of her dower at common law. * * *

"Item 5. Provided, in all cases nevertheless howsoever, that my hereinafter-named executors shall sell at public sale, for the best price that can be had for the same, all my real estate situate in the state of Pennsylvania or in the state of Ohio, excepting, however, my present mansion-house and other improvements, situate, &c.; * * * all of which shall be occupied by my said wife as long as she remains my widow, as above directed, and shall not be sold until after the death of my said wife Margaret; Provided, however, that the sales of my real estate, as directed under Item 5, shall be made within and at such time after my decease as may seem most to the interest of my estate, by my hereinafter-named executors.

"Item 6. That within one year after the decease of my said wife Margaret, my hereinafter-named executors shall expose to public sale all and the whole of my real, personal and mixed estate which may then be undisposed, for the highest and best price that may be had, and the proceeds thereof, together with all such moneys as may remain in their hands from my estate, after deducting such expenses as may legally occur, be divided and apportioned the neat balance into ten equal and alike shares, and one share thereof to be paid unto Susanna Davis, wife of Daniel Davis, or to her lawful issue; and one share unto Eli Hoffman, or to his lawful issue; and one share unto John Ingham, son of Samuel Ingham, or to his lawful issue; one share to my sister, Sarah Garret, wife of John Garret, or to her lawful issue; one share unto my sister Elizabeth, wife of Christian Uhrich, or to her lawful issue; one share unto my sister Catharine, wife of Isaac Miller, or to her lawful issue; one share unto Henry Backenstose (son of my brother John), or to the brothers and sisters of said Henry Backenstose, in equal shares; one share unto Henry Spangler (son of my sister Magdalena Spangler), or to his mother or her lawful issue; one share unto Henry Backenstose (son of my brother Jacob), or to his lawful issue, and in case he dies without issue, then the same shall be paid to his brothers and sisters, in equal shares; and the one-half or moiety of one share unto Henry Warner, son of Henry Warner, of Bethel township, Lebanon county, Pa., or to his lawful issue, and the other moiety or half of share unto Henry Loose, son of Abraham Loose, now in Cumberland county, Pa., or to his lawful issue.

"Provided, all times, that in any case any of the above-named

legatees should die before their legacy becomes payable, without lawful issue, where no further provision is made, in such case the share so bequeathed shall be divided in equal shares to and amongst those who are then living and named as legatees in this will. * * *

"Provided, under all circumstances, that if I should die with lawful issue, then this will to be void and of no effect, unless my issue should die without issue, then the said will shall be and remain in full force and virtue."

### CODICIL.

"Provided, in all cases, that Susanna Davis, wife of Daniel Davis, named as legatee in this my last will and testament, shall not have her legacy before her said husband's decease, only the interest annually thereof, after the death of my wife and a distribution is made of my estate, unless she should become needful, in case of sickness, &c., then she shall have as much as to help her out of necessity, providing it is after the death of my wife, and a distribution made. In all cases after the death of her said husband, it shall come to her under the 6th Item of this my last will and testament; if in case she should die before her said husband, it shall fall to her heirs."

The widow refused to take the property bequeathed to her under the provisions of the will, but elected to take and took under the provisions of the intestate laws. The whole of the real and personal property of the testator was sold and converted into money by his executors, the widow's part or share set apart for her and paid over, and the account of the executors confirmed absolutely, the 8th day of January, A. D. 1871, by which it appeared that there was a balance of nineteen thousand nine hundred and fifty dollars in their hands.

The widow being still living, John Ingham, one of the legatees for himself and as agent of the other legatees, presented a petition to the Orphans' Court, setting out the will and the other facts as above stated, and prayed for the appointment of an auditor "to make distribution of said estate to and among the legatees named in said last will," &c.

The executors by their answers resisted the application, for the reasons, that the legacies did not vest on the death of the testator, but were contingent, and that the will provided that the estate should not be divided till one year after the widow's death.

After argument, the court (Pearson, P. J.) delivered the following opinion:—

"On the 15th day of May 1852, Henry Backenstose executed his last will, which was admitted to probate on the 3d day of January 1864, he having died shortly before this time. The will is extremely contradictory, and hard to be understood; and what

24 P. F. SMITH—10

adds to the difficulty, his widow, to whom the estate was bequeathed for life, declined taking under the will, and claimed her distributive share under the intestate laws. The testator, amongst other things, directs that within one year after the death of his widow, all of his land shall be sold by his executors, and the money remaining in their hands, after all expenditures, shall be divided into ten equal shares, which he distributes among ten persons named, one of whom now petitions this court to have distribution made according to the terms of the will. This is resisted by the executors, on the ground that they cannot legally do so, the time therefor not having arrived—the widow being in full life. It is contended that the legacies are not vested, but contingent; and that the contingency on which they were to be paid has not yet happened. This depends on the effect of the widow's renunciation. Although the devises and bequests for the use of the widow are somewhat contradictory, yet we can readily collect from the whole wording of the instrument that she was the main object of the testator's care and bounty, and that the division of the estate was postponed solely for her benefit. Such being the case when she declined receiving the gift as intended, what was the effect on the other beneficiaries? This question is answered in terms by the decision of the Supreme Court in Brown and Sterrett's Appeal, 3 Casey 62, where it is held that when lands are given to a widow for life, and after her death the executors were directed to sell and divide the estate, as the sale was postponed for her benefit, she had the power to waive this advantage, and did so by electing to take under the intestate laws, whereupon her life estate became extinct, and it was the duty of the executors to make sale immediately. Such was the course pursued here, as the executors proceeded to sell that portion of the real estate expressly reserved to the wife, on her renunciation under the will. Again, it is held in Styer *v.* Freas, 3 Harris 339 (see p. 342), that although it is a general principle that the power to sell on the happening of a certain event cannot well be executed before it has transpired, yet there are exceptions. Where an event turns up which the testator had not contemplated, a court is compelled to inquire how he would have provided for it had it been foreseen—in short, to suppose an intention for him when he had none. In that case the sale was sanctioned, although the event had not occurred. The principles of this case are virtually recognised in Styer's Appeal, 9 Harris 86. And where the power to the executors was to sell on the death of the widow, and she joined in making the sale, it was held good. The intention of the testator is to govern, and the postponement having been introduced for the benefit of the widow, she could waive it, and the executors could sell before the contingency happened. No one could complain, as no one was injured thereby. Gast *v.* Porter, 1 Harris 533. The judge considers that had it

not been for the desire to provide for his wife, he would have ordered the whole estate to be immediately sold for the purpose of distribution. The same principle has been repeatedly recognised where property was devised to a trustee for the use of a married woman during the lifetime of her husband. It was held in one case, Koenig's Appeal, 7 P. F. Smith 352, that the trust ceased on the divorce of the wife, as the object of the trust was to protect the property against the husband. It matters not what may be the duration of an estate given to a trustee by will. It continues no longer than the thing sought to be secured by the trust demands: Id. 355; Hill on Trustees 339 *et seq.* In the case under consideration the executors were trustees of this property. The real estate was directed to be sold by them, which is the same in legal effect, under the 13th section of the Act of 24th of February 1834, as if it had been devised to them to be sold. The widow's renunciation under the will had the same legal effect as her natural death. The executors could at once make sale, and distribution among the devisees under the will would immediately follow; all reason for suspending the same having ceased. It was all intended for the benefit of the widow, who waived it by her own act.

" Another question of no small moment and of no inconsiderable difficulty arises under the sixth division of this will, whether the legacies therein given are vested or contingent? According to our understanding of the law of the case, the question does not arise at present, and possibly never may, as the devisees therein named may have all been living at the time the widow renounced, or even at present. We have no sufficient statement of the situation of those devisees, either in the petition or answers. That all will be made apparent by the report of the auditor appointed to make distribution, and if the point arises in the report, it must be determined.

" If these bequests were contingent, to vest on the death of the widow, yet, from what we have already said, her renunciation had the same effect in determining the contingency as her death. It would not be pretended that, had she died when she renounced, any legatee answering the description in the will, then in full life, would not have taken under it. We should know the precise situation of every one claiming an interest before entering on that subject. It must be borne in mind that this will was made in 1852, nearly twenty years ago, and the situation of the devisees may have been greatly changed since that time. Who died and who survived we do not know. Some may have passed off during the fourteen years that the testator lived, and thus the legacies may have lapsed.

" One thing we do know—that John Ingham, the petitioner and one of the legatees, is in full life, and demands distribution, so as

to enable him to obtain his share under the will, and as to him the legacy is vested as fully as if the widow were dead, though he may not be able to obtain his whole share until after that event." * * *

The court decreed:—

"That the executors must make distribution of the funds in their hands, and J. W. Ebur, Esq., is appointed an auditor to ascertain the situation of each legatee at the time of the testator's death; also at the time the widow renounced under the will, and at the present time; also the amount of money in the hands of the executors for distribution under the will; the sum held by each, how received, and whether they are jointly liable for the whole or each for his aliquot part? The auditor will report all of the facts, and also a scheme of distribution among the legatees, and report at his earliest convenience."

The auditor, on the 17th of March 1873, reported a scheme of distribution, and found that all the legacies were vested.

The executors filed the following exceptions:—

"1. The auditor erred in finding said legacies vested.

"2. The auditor erred in making distribution of said fund among legatees or distributees, because, by the express terms of the will, the estate is not to be divided until within one year after the decease of his wife Margaret, who is not yet deceased."

The court confirmed the report, and the executors appealed to the Supreme Court, where they assigned for error the overruling of their exceptions to the auditor's report.

*J. Funck*, for appellants.—If the legatees do not survive the widow, they can take nothing, because, previously to her death, nothing is given to them; their title to these legacies, therefore, expressly depends upon the contingency whether they will survive the widow: Gilleland *v.* Bredin, 13 P. F. Smith 396; Lamb *v.* Lamb, 8 Watts 186; Moore *v.* Smith, 9 Id. 403; Seibert's Appeal, 1 Harris 501; Cooper *v.* Scott, 12 P. F. Smith 139; Bowman's Appeal, 10 Casey 19.

*J. Benson* (with whom was *A. R. Boughter*), for appellees.— The widow's renunciation, and taking under the law on her life-estate, can have no other effect than to extinguish her estate entirely, and merge the lesser estate in the greater, which is vested in the executors: Brown and Sterrett's Appeal, 3 Casey 62; Styer *v.* Freas, 3 Harris 339; Styer's Appeal, 9 Id. 86; Gast *v.* Porter, 1 Id. 533. It is evident, from the wording of the will, that the object for which the trust was created ceased to exist, and the law will not continue it longer than the thing sought to be secured by the trust demands: Hill on Trustees 339 *et seq.*; Koenig's Appeal, 7 P. F. Smith 352. The legacies were vested: Cooper *v.* Scott, 12 P. F. Smith 139; Kerr *v.* Bosler, Id. 183;

[Coover's Appeal.]

Bowman's Appeal, 10 Casey 19; Taylor v. Taylor, 13 P. F. Smith 487; McGill's Appeal, 11 Id. 46; Mengel's Appeal, Id. 248; Umstead and Reiff's Appeal, 10 Id. 365; Rife v. Geyer, 9 Id. 393; Sheets's Estate, 2 Id. 257. -

Judgment was entered in the Supreme Court May 29th 1873.

PER CURIAM. — Decree affirmed on the opinion of Judge Pearson.