# ESTATE OF JAMES M. VANCE, DECEASED.

APPEALS BY THE CONTRIBUTORS TO THE PENNSYLVANIA HOSPITAL, JAMES V. QUINTON, AND THE PRESBYTERIAN HOSPITAL, FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 15, 1891—Decided April 6, 1891.
[To be reported.]

1. When a testator by his will bequeaths the income of his estate to his widow for life, with particular and residuary bequests payable at her death, on distribution an election by the widow to take against the will must be treated, in all its results, as the equivalent of her death: Ferguson's Est., 138 Pa. 208.

2. The effect of such election will be to accelerate payment of all the legacies, in the testator's order of priority. The particular legacies cannot be postponed until the widow's death, that the income thereof may be transferred to the residuary legatees during her life, to compensate for diminution in the amounts coming to them.

3. The equitable doctrine stated in Sandoe's App., 65 Pa. 314, that the benefit intended for the widow will be sequestered to secure a provision for those who are disappointed by her election, does not justify an interference with the right of priority given by the will to other beneficiaries, merely on account of diminution of the residuary estate.

4. A court of equity will interpose if necessary to preserve the intention of the testator from destruction; but such interposition should never take place in favor of a residuary as against a definite legatee, unless upon a plain implication in the will that the residuary legatee is in fact a preferred object of the testator's bounty.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 114 July Term 1889, Nos. 202, 232 January Term 1891, Sup. Ct.; court below, numbers and terms not shown.

James M. Vance died July 22, 1887, leaving a widow, S.

Almira Vance, and collateral relatives, and leaving an estate amounting to more than $400,000. By his will he devised the income of his real estate, amounting to about $4,000 per year, to his wife for life; and, after charging his personal estate with annuities, aggregating $1,600, to certain relatives, he bequeathed the residue of the income of his personalty to his wife for life. At the death of his wife, a legacy of $1,000 was bequeathed to each of six nephews of himself and wife, J. Vance Quinton being one of them; and legacies, aggregating $17,000, to five charities, among which were the Pennsylvania Hospital and the Presbyterian Hospital in Philadelphia. He then directed that after his wife's death "all the rest, residue and remainder" of his estate should be divided among certain collateral kindred.

S. Almira Vance, the widow of the testator, elected to take against the will and under the intestate laws. By agreement of all parties interested, the annuities were capitalized at $13,000, which sum was paid out of the personal estate in discharge thereof.

The account of the executors being before the Orphans' Court for distribution of the balance in the hands of the accountants, the auditing judge, FERGUSON, J., filed an adjudication finding in substance that the widow, having elected to take under the intestate law instead of under the will, was entitled to one half the personal estate absolutely, "thus destroying the whole scheme of distribution contemplated by the testator, and diminishing the fund to be distributed at the death of the widow among the general and residuary legatees, just one half;" that the testator should be presumed to have known the amount of his estate, and necessarily the amount which would be coming to each of the residuary legatees the same as he knew the amount he had given to each of the general legatees, and to have intended that, upon the death of his wife, they should share his estate in the proportions in which he had given it to them; and that, as the widow's election had reduced the estate one half, equity required that there should be a proportionate reduction of all the legacies, whether general or residuary; citing: Dyose v. Dyose, 1 P. Wms. 305; Ex parte Chadwin, 3 Swanst. 380; McKnight v. Read, 1 Wh. 218; Young's App., 39 Pa. 115; Taylor's Est., 5 Phila. 218;

Bard's Est., 58 Pa. 393. The adjudication, accordingly, directed an immediate distribution of the personal estate upon the basis of such an abatement.

Exceptions to the adjudication having been argued before the court in banc, the following opinion was filed March 2, 1889, PENROSE, J.:

Though much can be said in favor of the view taken by the auditing judge, supported as it is by the opinion of so able a jurist as Judge Oswald Thompson, in Taylor's Est., 5 Phila. 218, we are not convinced that the general legatees can be called upon to abate, while there is any personal estate applicable to their payment; especially where, as here, the residuary legatees are also residuary devisees, and as such are benefited by the election of the widow to take against the will, and the consequent acceleration of their estate in one half the lands, with no lessening of their right to the other half at her death. Even as between legacies of the same class, abatement does not take place as against those in favor of whom the will discloses an intention to give a preference : See Bard's Est., 58 Pa. 393 ; and a gift of a residue implies, ex vi termini, a preference in favor of those to whom specific amounts are bequeathed. The residue is that which is left after all previous demands have been fully satisfied ; and all losses or diminution, arising from unexpected claims or shrinkage of values, must logically fall upon it. Such contingencies are supposed to present themselves to the mind of the testator; and, in the absence of evidence of an intention to the contrary, their consequences cannot be permitted to be visited upon pecuniary legatees, in relief of those to whom nothing is given until the former have been paid in full. It is not easy to see why the result should be different where the change of circumstances arises from the election of a widow to take against the will of her husband,—a right secured to her by act of assembly, and more naturally, therefore, in the contemplation of the testator than either of the contingencies above referred to. It is true that in the somewhat, but not altogether similar case of a loss arising from the devastavit of an executor, Lord COWPER, in Dyose v. Dyose, 1 P. Wms. 305, held that the residuary legatees were entitled to share with the pecuniary legatees according to the propor-

Opinion of Court below.

tions existing at the death of the testator; but this case has been condemned by Lord THURLOW, in Fonnereau v. Poyntz, 1 Bro. C. C. 478, and Humphreys v. Humphreys, 2 Cox 186; and by Sir WILLIAM GRANT, in Page v. Leapingwell, 18 Ves. 466. See also Wilmot v. Jenkins, 1 B. 401; Baker v. Farmer, L. R. 3 Ch. 537. There may, of course, be cases, as in Ex parte Chadwin, 3 Swanst. 380, where, by reason of the act of the pecuniary legatee in becoming a party to the devastavit, he may be reduced to a mere footing of equality with the residuary legatee; but such cases are exceptional: Theobald on Wills, 461.

But does the question of abatement now arise? The election of the widow to take against the will only changes its provisions to the extent that they interfere or are inconsistent with such election; in all other respects the rights of the parties taking under the will are unaffected. Residuary legatees are entitled to any benefit that may accrue by reason of lapse of legacies, or failure to become operative of any of the provisions, just as, on the other hand, they must bear any loss arising from a changed state of circumstances: qui sentit onus, sentire debet et commodum. When the residuary legatee is nominated generally: Williams on Exrs., 1458, he is entitled in that character to whatever may fall into the residue after the making of the will, by lapse, invalid disposition, or other accident. "It has long been settled," said Sir WILLIAM GRANT, in Cambridge v. Rous, 8 Ves. 25, "that a residuary bequest of personal estate (it is otherwise as to real) carries not only everything not disposed of, but everything that in the event turns out not to be disposed of." See, also, James v. James, 4 Paige 115; Van Kleck v. Reformed D. Church, 6 Paige 600.

Here the will gives the income of the entire estate to the testator's widow for life, and by reason of her election to take against it, the one half of the life-estate so given, being undisposed of until her death, goes, necessarily, under the principles referred to, to the residuary legatees, for the specified period. This was the precise point decided by Chancellor WALWORTH, in James v. James, supra. The pecuniary legacies do not become payable until the widow's death, and the legatees have no right, as against the residuary legatees, to call for present payment. It is true, where the estate is given to a widow for

life, with remainder to children, as in Rogers' Est., 17 Phila. 478; s. c. 16 W. N. 228, or other persons, the remainder is accelerated, as a matter of course, where the former takes against the will, to the extent that it is not defeated by such election; but this principle has no application to the case of pecuniary legacies given at a future date, though there may be an intervening estate which fails. Such a case is in all respects analogous to that of legacies given after a provision for accumulation which contravenes the statute, which are not accelerated by the failure, thus caused, of the particular estate: Green v. Gascoyne, 4 De G., J. & S. 565; Ellis v. Maxwell, 3 B. 587; Attorney General v. Poulden, 3 Ha. [Hare?] 555; Grim's Est., 15 Phila. 603; s. c. 12 W. N. 354; Grim's App., 109 Pa. 391.

It is at least well settled that where the provisions of a will are interfered with by the election of one having a paramount right to take against it, equity will sequester the testamentary gift to the person so taking, in order to secure compensation to those whom such election disappoints: Story's Eq., §§ 1082, 1083; Gretton v. Haward, 1 Swanst. 441. In such case, "courts of equity will treat the substituted devise, not as an extinguished title, but as a trust in the devisee for the benefit of the disappointed claimants, to the amount of their interest therein." The doctrine has been fully applied in Pennsylvania for the benefit of persons disappointed by the election of the widow of the testator to take against the husband's will: Sandoe's App., 65 Pa. 314; Brubaker's App., 65 Pa. 317; Young's App., 108 Pa. 17.

Of course, the first inquiry is, who are the disappointed persons, for the sequestering is only for the purpose of securing compensation to them; and here, assuming that the pecuniary legatees cannot be made to abate with the residuary legatees, it is clear that the former, if payment at the widow's death is secured to them, are not affected at all by her election to take against the will. In the meantime the income will go to the residuary legatees towards compensation for the loss of one half of the principal of the personal estate which such election has taken from them. The case of Young's App., supra, is, in principle, identical with that now before us. There, present payment was refused to the pecuniary legatees, and the income of the sum set apart for their payment at the

widow's death was applied to the payment of annuities, instead of throwing such payment upon the residuary legatees. This, it was said by Mr. Justice STERRETT, in affirming the decree, worked no injury to any of the complaining legatees. "By the terms of the will their legacies are not payable until the death of the widow, and what right have they to demand payment in advance of the time, so long as there are disappointed beneficiaries who in equity should be compensated?" In the court below this was stated somewhat more fully by Judge Hawkins: "Their amount is not reduced, and the legatees and devisees are not injured by the widow's election. They are not therefore disappointed legatees, do not require compensation, and have no equitable right to have the benefit intended for the widow sequestered for them. Moreover, even if the whole income arising from the legacies and devises during the widow's lifetime should be sequestered to secure compensation to disappointed legatees, it would but carry into effect the intention of the testator that their enjoyment should be postponed until after her death; whilst it is evident that the amount which it was intended the residuary legatees should receive is largely reduced, that they are the disappointed legatees, and if the annuity is charged upon their legacies it would to a still greater extent defeat the intention of the testator."

It may be, under the act of assembly which permits possession to be given to tenants for life of personal property, upon the entry of security for the protection of future interests, that the residuary legatees are entitled to demand possession upon the entry of such security; but, without passing upon this question, we now direct that there be retained in the hands of the executors a sum sufficient to pay in full the pecuniary legacies given at the widow's death; the amount to be duly invested, and the income, until the time at which the legacies become so payable, paid to the residuary legatees according to their respective interests.

It was suggested that the entire personal estate passing under the will should be thus held in trust while the widow lives; but, as the residuary legatees are entitled to all except what is given specifically, and as they are all sui juris, or duly represented, a trust, except to the extent required for the protection of the pecuniary legatees, would be inoperative. . . . .

Arguments.

The adjudication will be modified in conformity with this opinion. Let the necessary decree be prepared by counsel.

—A decree having been entered in accordance with the foregoing opinion, the contributors to the Pennsylvania Hospital, James Vance Quinton, and the Presbyterian Hospital in Philadelphia, took these appeals, specifying that the court erred:

1. In decreeing that the accountants should invest the amount of the particular legacies during the lifetime of the widow.

2. In decreeing that the general legacies should not be distributed before the death of the widow.

*Mr. A. Sydney Biddle* and *Mr. E. F. Hoffman* (with them *Mr. G. W. Biddle* and *Mr. H. G. Ward*, for the appellants:

This case is governed by Ferguson's Est., 138 Pa. 208. Precisely the same arguments, used by Mr. Justice MITCHELL in the opinion of the Supreme Court in that case, were unsuccessfully advanced by us in the argument of the present case before the court below. The particular legacies are made a charge by the will upon the testator's entire estate, but, according to the decree, they are secured only by a sum equal to their face value. This does not carry out the testator's intention. Nor was there any purpose of the testator to be subserved by the disposition of the estate which the court made, the annuities having been capitalized and discharged. Young's App., 108 Pa. 17, was decided upon the ground that, if a distribution had been made among the particular legatees at the date of the widow's election, the income of the residuary estate would have been insufficient to pay an annuity for the support of the testator's sister, charged upon the life-estate given to the wife, and the plain intent of the testator to provide for his sister would have been defeated.

*Mr. John G. Johnson*, for the appellees:

1. The prosecution of these appeals is due to a misapprehension of the decision in Ferguson's Est., 138 Pa. 208. In that case, the court below directed distribution of the moiety of the estate among the residuary legatees, giving the particular legatees nothing, and, under the decree as made, the pecuniary legacies might never have been paid. The present case presents a very different question. The pecuniary legacies will

Arguments.

assuredly be paid at the time fixed by the will, to wit, at the death of the widow. All that was said in Ferguson's Estate must be referred to the subject matter of the case.

2. However, not only is there nothing in the actual decision in Ferguson's Estate that rules the present case against us, but, read carefully, the opinion delivered will be found to have nothing in it conflicting with the action of the court below in the case at bar. On the contrary, the opinion recognizes the fundamental principle of compensation recently applied in Young's App., 108 Pa. 17, following Sandoe's App., 65 Pa. 316, and in Brigham's App., 34 Pittsb. L. J. 304 (6 Cent. R. 118), affirming Davis's Est., 33 Pittsb. L. J. 355. Coover's App., 74 Pa. 143, decides nothing more than that, on an election to take against a will by a widow to whom a bequest is given for life, with remainder to certain named persons, the residuary legatees will take immediately, because of the lack of any reason for retaining longer the portion of the property freed from her life-estate.

3. But in our case there are pecuniary legacies payable by the will only after the death of the widow. As so payable, their present worth is much less than their nominal value, yet if they are ordered to be paid at once, the legatees will receive the face value and thus get more than was given them by the testator. If it be said that the residuary legatees were to take nothing until the widow's death, we answer that they are entitled to everything not otherwise given by the will. If the will had bequeathed the property to residuary legatees at the end of a specified period, directing it to be invested in the interim, without disposing of the income, the residuary legatees would have taken such income.

4. Is the case presented by the income of the released moiety, in the present instance, different? The residuary legatees are the only parties disappointed by the election of the widow in this case, and their disappointment is a sufficient reason for withholding the particular legacies until her death, in order to sequestrate the income thereon which she would have been entitled to, for the compensation pro tanto of the residuary legatees. The election of the widow to take against the will is equivalent to her death only when there is no equitable right in any one to demand that payment of the particular legacies

shall be deferred to the time of her death. The residuary leg-
atees have such equitable right in this case, the widow having
taken from them something that was meant for them.

OPINION, MR. JUSTICE MITCHELL:

These appeals are ruled by Ferguson's Est., 138 Pa. 208, de-
cided since the adjudication in the court below. That case
was the necessary sequence of Coover's App., 74 Pa. 143;
Gallagher's Est., 76 Pa. 296; and Heineman's App., 92 Pa.
95, and these appeals might be rested on its authority. But
out of deference to the opinion of the learned court below and
the argument of counsel, we have reviewed the ground there
taken, as if the question were still open.

The widow's statutory rights in her husband's estate are
paramount to his will, and he is presumed to know that fact.
It is therefore not accurate to say that his whole scheme of
disposition of his property is destroyed by the widow's election.
It is disarranged pro tanto, but in the absence of any reference
to such contingency, or provision for it in the will, there is
ordinarily nothing on which to found a presumption that he
would have made any specific difference in distribution, had
he known she would exercise her right; certainly not, that he
would have decreased any of the definite pecuniary legacies, to
swell the amount going at the end of the list to the residuaries.
No court is authorized to make a new distribution for the sake
of equality. The testator's scheme must be carried out as he
made it, except so far as that has been rendered impossible by
the widow's action, and in so far, a court of equity interferes
to preserve an intent which would otherwise be sacrificed.
Such interference is the pure creation of equity, and had its
origin in the doctrine of equitable election, which compelled
one taking a benefit under a will to acquiesce in other pro-
visions of the same instrument which for any reasons were not
binding upon him. Equity compelled him to elect, and, if he
chose to assert his prior rights against the will, the chancellor
treated the provision of the will in his favor as forfeited, and
then used the benefit created by such provision as a fund to be
administered so as to carry out, as nearly as might be, the pur-
poses of the testator which would otherwise fail.

In England, the point arose most frequently in cases where

the testator, having only a life-estate or a qualified interest or power over the subject, undertook to dispose of a greater interest, to the prejudice of the legatee's legal right: Streatfield v. Streatfield, 1 W. & T., Lead. C. in Eq., 340; and see the cases cited in Story's Eq. J., §§ 1082, 1083, note. In this country, such cases are rare; but the statutory rights of widows, as to personalty as well as dower, have frequently created the same situation, and the same doctrine has been uniformly applied. It was long a debatable question whether the refractory legatee forfeited absolutely all the benefits intended for him by the will, or only so much as might be required to make good that part of the scheme of the testator which his action had disappointed. The question can hardly be said to be entirely at rest yet; but, though the foundation of the chancellor's action is a forfeiture by the assertion of a conflicting right, yet the better opinion now certainly is that such forfeiture will be enforced only so far as may be necessary to make good the failure of the testator's other intent; in other words, it is forfeiture only for the purpose and to the extent of compensation.

The American cases, as already noted, arising chiefly from the assertion by a widow of her statutory rights against the provisions of the husband's will, have uniformly treated the benefits intended by the will for her, as a fund which could be sequestrated and used as a trust to carry out the other provisions of the will. But the precise limits of the interference of equity, by way of rearrangement of the distribution of the decedent's estate, do not appear to have been much discussed. None of the cases cited by counsel touch the exact point, how far equity will interfere in behalf of mere residuary legatees, and such research as I have had opportunity to make has found but one. In Firth v. Denny, 2 Allen 468, there was a fund provided for the widow for life, and after her death, one half of it to certain specified legatees, and the residue of the estate, including the other half of the widow's fund, to trustees for charity. The widow elected to take against the will, and thereby took more than the fund set apart for her; but there was enough estate to pay all the definite legacies, and leave a balance for the residuaries. The court held that the ultimate loss must of course fall on the residuaries, but ordered the payment

of the definite legacies to be postponed until the actual death of the widow, and the interest upon the fund in the meantime to be paid to the residuaries; and this was done without question apparently, though the opinion says, "It does not appear exactly to what extent the election made by the widow left the residue of the estate less than it would have been if she had accepted the provision made in the will in her behalf." It was argued by distinguished counsel that the special circumstances showed that the residuary legatees, though lowest in the list, were in truth the chief objects of the testator's bounty ; and as they seem to have been given the bulk of the estate, there was fair argument for such view, but the court did not put its decision on that ground. The opinion is not fortified by the citation of a single authority, nor is it reasoned out from principles. As already said, the result seems to have been accepted as the unquestionable consequence of the mere fact of the disappointment of the residuary legatees in the amount of the fund coming to them. It may be, however, that the doctrine of acceleration of the time of payment of legacies dependent on the life of the widow, by her election to take against the will, does not obtain in Massachusetts. The opinion of the court in Brandenburg v. Thorndike, 139 Mass. 102, looks in that direction, and, if so, it is clear why the judge in Firth v. Denny thought it unnecessary to go into reasons for the decision. It would, however, at the same time, be ample reason why Firth v. Denny should not be authority in this state, where the doctrine of acceleration is firmly established: Coover's App., 74 Pa. 143.

But, the time of payment being held to be accelerated, sound reason requires us to hold that the widow's election shall be treated in all its results as equivalent to her death. The testator's disposition of his estate is interfered with pro tanto, but the court must carry it out as nearly as possible in all other respects. No departure from it can be admitted, except from necessity, and then only to the extent that necessity absolutely requires.

The amount of the legacies actually coming to the legatees is only one incident of a will. The order of precedence is another, and it does not seem necessary that the latter should be disturbed because of a change in the former. Hence no pro-

Opinion of the Court.

vision of the will ought to be interfered with by the court except for the preservation of one of superior or at least equal rank in the testator's scheme, and as residuary gifts are from their nature ordinarily the lowest in rank, no others can be interfered with for the sake of benefiting them. From their very definition, they come in last, and the testator, with knowledge of this fact, declares that they shall get nothing until after all others are paid in full. Mere diminution of the amounts coming to the residuaries, does not in any way justify interference in the regular and established order of priority. When, therefore, it is said, as in Sandoe's App., 65 Pa. 314, that equity will sequester the benefit intended for the wife to secure provision for those who are disappointed by her action, the disappointment to be understood is the failure of the testator's intent in regard to other beneficiaries. These will be protected, not for their own sakes, but of necessity, in order to preserve the wishes of the testator, and such necessity does not extend to the interference with any beneficiaries prior in rank for the sake of the residuaries. One of the chances the latter take from the nature of their position is that the share coming to them may undergo changes in amount before the period of distribution.

There is no force in the argument that the general pecuniary legatees have no cause of complaint at being postponed until the death of the widow, as their legacies by the terms of the will are not payable until that event, for neither are the residuary legacies. The advancement of the time of payment is the legal consequence of the termination of the purpose of the postponement, and both the definite and the residuary legacies share this advantage in common. To postpone the definite legatees, and transfer the income of their legacies to the residuaries during the widow's life, is not in furtherance of any direction of the will, but in direct violation of the testator's intent that the definite legacies should be paid in full before the residuaries get anything. Nor is it in pursuance of the equitable doctrine of sequestration of the benefits intended for the widow, for, as already said, that never ought to reverse the testator's order of priority. Nor does it even accomplish, except by accident, its nominal purpose of preserving the relative amounts as they were at the testator's death. The exact fig-

Opinion of the Court.

ures in the present case we have not before us, but the possibilities of the plan adopted were shown very forcibly by the illustration of one of the appellants' counsel at the argument. If the general legacies were one hundred thousand dollars, and the residue at the time of the testator's death five thousand dollars, the sequestration of the interest on the former for the benefit of the latter would give the latter an income of one hundred per cent a year during the widow's life. Of course no court of equity would apply the plan without modification to such a case, and the omission of the court in Firth v. Denny to require the exact figures was probably because it was understood all around that, even with the income during the widow's life, the residuaries would still be the losers. But such a possible result could only be avoided by a balancing of accounts in each case that would be beyond the sphere even of a court of equity. How far a sum in hand is preferable or otherwise to a larger sum at an indefinite future date, is a problem with too many elements of personal preference, necessity, and circumstance, to be solved by a court upon the rates of interest and tables of the expectancy of life. As said in Ferguson's Estate, supra, the law must have a settled and uniform rule, and it is that as to provisions in a will for legacies subordinate to a life-interest in the widow and contingent upon her death, or payment of which is postponed till then, her election to take against the will is equivalent to her death. By such election the widow takes her share as if the husband had died intestate, and the will then operates on the rest of the estate precisely as if the widow were dead. A court of equity will interpose, if necessity requires, to preserve the intention of the testator from destruction, but such interposition never should take place in favor of a subordinate as against a preferred or superior intent, and therefore never in favor of a residuary as against a definite legatee, unless upon a plain implication in the will that the residuary legatee was in fact a preferred object of the testator's bounty. There is nothing in the will of the testator Vance, to require any departure from the general rule thus expressed.

> Decree reversed, and record remitted for distribution to be made as herein indicated.

Mr. Justice STERRETT noted his dissent.