## HORTON W. JONES, ADMR. OF LOYAL C. REMELE *v.* ASHMUN A. KNAPPEN, ET AL.

*Construction of will.   Widow.   Remaindermen.   Costs.*

1.  A legacy to A. alone, not naming his heirs, lapses by the death of the legatee before that of the testator.
2.  The testator, after giving his wife a specific legacy and the use of all his estate during her natural life, said : "At her decease I give, devise and bequeath all my estate that may be remaining as follows." He then gave certain sums to individual legatees, and the residue to the next of kin of himself and wife in equal proportions. The testator deceased before his wife. *Held,* that the remainders vested upon the death of the testator and not upon that of his wife.
3.  The widow waived the provisions of the will, and elected to take under the statute. After paying her what she would thus become entitled to and the specific legacies, almost nothing would be left for the remaindermen. *Held,* that the estate should be allowed to accumulate for their benefit during the life of the widow, and that the specific legacies were not payable until her death.
4.  This being an appeal from a decree of the Probate Court, coming into the Supreme Court upon exceptions from the County Court, the Supreme Court can make no order as to costs, except costs occuring in that court.

This was an appeal from a decree of the Probate Court distributing the estate of Loyal C. Remele. Trial by court at the December term, 1890, Start, J., presiding.

The appellants except.

The following was the will of the testator, omitting the specific legacies to persons other than his wife : " First, I give, devise and bequeath to my wife, Alma Remele, the sum of one thousand dollars, and direct that my administrator in addition thereto pay to her and for her benefit the use and income of all my estate as

long as she shall live. At her decease, I give, devise and bequeath all my estate that may be remaining as follows, namely: * * * And the rest, residue and remainder of my estate, I give, devise and bequeath to the next of kin of myself and my wife, one-half to the next of kin of myself, to be distributed according to the law of intestate estates, and the other half of said residue, to the next of kin of my wife, Alma, as if it was her estate, to be distributed according to the law of intestate estates."

The decree of the County Court was as follows:

1st. That the said legacy of five hundred dollars to said Hiram Alden, lapsed by his decease before the testator.

2d. That all the legacies given by said will, as well the pecuniary as the residuary legacies, excepting only said legacy to Hiram Alden and the legacies given to said widow, vested in said legatees respectively at the decease of the testator, but that the enjoyment of the same is postponed to the time of the decease of said widow.

3d. That the period of enjoyment of said legacies is in no case accelerated by the election of said widow declining to accept the provisions made for her in and by said will, but that the time of enjoyment of each and all of said legacies, as well residuary as pecuniary, remains the same as if said widow had taken the provisions made for her in and by said will.

And it is hereby, *pro forma* and without hearing, decreed that said administrator be, and he is hereby directed by this court to hold the said portion of said estate so in his hands remaining, that is to say, said sum of $8,399.75, until such time as said widow shall decease, and in the meantime to keep the same invested in safe and productive securities, and to receive, retain and re-invest the income thereof;

And upon the decease of said Alma Remele, widow as aforesaid, to turn such securities into cash, and out of the same to pay all the said pecuniary legacies (not including said legacy to said Hiram Alden nor said legacy to said widow, Alma Remele), with interest from the decease of said Alma, and to distribute and pay out the residue thereof, less administration expenses, to said residuary legatees in the shares and proportions following, that is to say: * * * * And the reversion of the widow's dower is reserved for further decree.

The remaining facts sufficiently appear in the opinion.

Jones, Admr. *v.* Knappen.

*Bliss & Royce,* for the appellants.

All the legacies vested upon the death of the testator, their enjoyment being postponed until the decease of the widow. 2 Redf. Wills, 215, *et seq.,* 266, 267; *Weatherhead* v. *Stoddard,* 58 Vt. 629; 1 Jar. Wills (Ed. 1861), 758; *Neilson* v. *Bishop* (N. J.) 17 Atl. Rep. 962; *Dale* v. *White,* 33 Conn. 294; *Eldredge* v. *Eldredge* (N. J.) 3 Cent. R. 344: *Bull* v. *Bull,* 8 Conn. 47; 20 Am. Dec. 86; Hoffen's Estate, 70 Wis. 522; *Eagles* v. *Le-Breton,* L. R. 15 Eq. Cas. 148.

The waiver by the widow of the provisions of the will operated to accelerate the payment of all the legacies, and they thereby became payable immediately.

*Stewart & Wilds,* for the plaintiff.

The remainder to the kin of the wife would not vest until her death. 2 Redf. Wills 621, § 39.

The court should carry out as nearly as possible the intent of the testator. That can only be done in reference to the remaindermen in this case by allowing the estate to accumulate during the life of the widow for their benefit.

*Adams* v. *Gillespie,* 2 Jones Eq. 244; *Firth* v. *Denny,* 2 Allen 468; *Fox* v. *Rumery,* 68 Me. 121.

The opinion of the court was delivered by

ROSS, Ch. J. Hiram Alden died before the testator. The legacy was to him alone, and not to him or his heirs. It lapsed by his decease antedating the testator. It is not otherwise contended. *Careton* v. *Murrey,* 94 Am. Dec. 152 and note.

2. The testator, in addition to a specific devise to his wife, gave her the use and income of his estate during her natural life. He then proceeds. "At her decease I give, devise and bequeath all my estate that may be remaining as follows." He then gives certain sums to individual legatees, and the residue to

the next of kin of himself, and of his wife, to be divided one-
half to the next of kin of ·each. The next of kin of each were
ascertainable at the decease of the testator. The contention is
whether the estate vested at the death of the testator, or at the
decease of the taker for life. The language used is as consistent
with an intention to postpone the enjoyment only, as to postpone
the vesting of the remainder. Unless the language of the testa-
tor when applied to the circumstances of the case, clearly indi-
cates a contrary intention, the law favors the vesting of remain-
ders on the death of the testators when the will becomes opera-
tive. Such is presumed to be the testator's intention unless the
contrary appears. *In re* Tucker's Will, 21 Atl. R. 272, 63 Vt.
104. *Nodine* v. *Greenfield,* 7 Paige's Ch. 544, (4 Law. Ed. N.
Y. Ch. R. 267 and note); *De Peyster* v. *Clendining, id.* 434 and
note. (8 Paige's Ch. 295.) If the language of the will imports
a present bequest of property to be distributed at a period subse-
quent to the death of testator, the persons *in esse* at the time of
his death, will as a rule take a vested interest. *Collins* v. *Col-
lins,* 5 Law. Ed. N. Y. Ch. R. 523 and note. (2 Paige's Ch. 9.)

So, where the benefit of a legacy is given for life to one, and
after his decease to another, the interest of the second legatee is
generally vested, and passes to the heirs of the second legatee,
though he die during the existence of the life of the first taker.
*Barker* v. *Woods,* 7 Law. Ed. N. Y. Ch. R. 265 and note.
(1 Sand. Ch. 129.) We think the language used by the testator
was intended only to postpone the enjoyment of the estate, the
life use of which was given to his wife; and that the legatees,
including the next of kin, took a vested interest in the estate,
if the estate was sufficiently large to reach the next of kin, under
the clause disposing of the residue.

3. The widow waived the provisions of the will, and took
the share of the estate allowed by law. The contention is whether
this waiver accelerated the time when the special legatees and
next of kin are to come into the enjoyment of the respective

proportions of the estate. Generally the termination of the life
estate before the decease of the life tenant, lets the reversioner
into immediate enjoyment of the estate. When the widow waives
the provisions of the will, and takes under the law, such action
usually diminishes the amount of the estate available for the other
legatees or devisees pro rata, and it is equitable that they should
come earlier into the enjoyment of their diminished legacies to
compensate them for the diminution caused by such action. Such
waiver blots out all the provisions of will for the widow, and
leaves the remaining provisions of the will in force, to be accom-
modated equitably to the state of the testator's property as left by
such action. The testator in the present case left about $15,000
in property. He gave his wife $1,000 of this, and the use and
income of all of his estate during life. In specific pecuniary leg-
acies to be paid at her decease, he disposes of $7,500 of the estate
of which she was given the use for life, and the residue he gave
to be divided half and half between his next of kin, and her next
of kin. The action of the widow in waiving the provisions of
the will, and taking what the law allows, operated to diminish
largely the residue of the estate given to the next of kin of the
testator and of his wife, if distribution is to be made at once.
There is enough of the estate remaining to pay the specific pecu-
niary legacies in full. But these legatees will receive just what
the testator set apart for them if the payment of their legacies is
postponed until the decease of the widow. Such postponement
would to some extent, and perhaps wholly compensate the next
of kin, for the diminution caused by the action of the widow, of
that part of the estate given by the testator to them. I have
found very few decided cases where the action of the widow has
affected the relative rights of the specific and residuary legatees as
it does in the case. It is the first time this precise question has
been considered by this court. *Firth* v. *Denny*, 2 Allen 468,
presented this identical question. Without any discussion of the
question of acceleration of payment of specific pecuniary legacies,

it was held that the estate should be held to accumulate for the benefit of the residuary legatees, until the decease of the widow. This question is raised and decided *In re Ferguson's Estate,* 138 Penn., 208 (20 At. R. 945). It is there held that the election of the widow to take under the law, was equivalent to her death, and that what remained of the estate after the widow took what the law allowed should be distributed at once, although such holding operated wholly to disappoint the residuary legatee. The court rests this decision largely upon *Coovers Appeal,* 74 Pa. St. 143. An examination of that case shows that it did not present the identical contention under consideration. The testator gave his wife a life estate, and the remainder he divided into ten equal shares, and gave each share to a particular individual, or her lawful issue, with a further provision for its distribution, in case the individual died without issue. It did not present the question of the effect of such election, when it operated to diminish the portion given to one class of legatees only. In *Sandoe's Appeal,* 65 Pa. St. 314, the election of the widow operated to affect some of the specific legatees unequally. The court state this to be the rule in such a case. "The rule in equity treats the substituted devises and bequests to the wife, as a trust in her for the benefit of the disappointed claimants, to the amount of their interest therein, and the court will assume jurisdiction to sequester the benefit intended for the refusing wife, in order to secure compensation in those whom her election disappoints." Woer. Am. Law of Administrators 119, says on this subject: "The rejection by the widow of the provisions made for her by will, generally results in the diminution or controvention of devises and legacies to other parties. The rule in such case is that the devise or legacy which the widow rejects is to be applied in compensation of those whom her election disappoints. To the same effect is *Wood* v. *Wood,* 1 Met. Ky. 512; and *Dean* v. *Hart,* 62 Ala. 308. This same result in principle is reached by accelerating the enjoyment of the remainder, when the election

of the widow only effects equally those to whom the remainder is given. *Fox* v. *Rumery*, 68 Me. 121; *State* v. *Smith*, 16 B. J. Lea. Tenn. 662; *Holderby* v. *Walker*, 3 Jones Eq. 46; *Robinson* v. *Harrison*, 2 Tenn. Ch. 11; *Armstrong* v. *Park*, Hum. (Tenn. R.) 195; *Capron* v. *Capron*, 6 Mackey, 340, (12 Cent. Rep. 43.) In *Adams* v. *Gillespie*, 2 Jones Eq. 245, the facts appear to raise the question raised by the case at bar, but the decision does not touch upon it further than to hold that the election of the widow removed her life estate from the property, and accelerated the enjoyment of the next life taker. The other cases cited by the counsel for the appellant do not bear specially upon the point under consideration. The controlling, and, we think the more reasonable principle, announced in most of these cases, is the one expressed by Woerner, *supra*, viz., to use the renounced devises and legacies given by the will to the widow, to compensate as far as may be, the devises and legacies diminished by such renunciation. When the remaindermen are effected *pro rata* by such renunciation, acceleration of the enjoyment of their devises or legacies, diminished proportionably, will equitably compensate them, so far as possible for such diminution. But in this case acceleration of enjoyment would increase the specific pecuniary legacies, to the detriment of the residuary legatees, whose shares only are diminished by the renunciation. Applying the principle stated, the life use of the property given by the will to the widow, and renounced by her, should be used to compensate the residuary legatees, the next of kin of the testator and of his wife. This may be accomplished by allowing that portion of the estate, not taken by the widow, to accumulate during her natural life, or, by the consent of the parties interested, the same result could be reached by reducing to their present worth, the specific pecuniary legacies, on the basis of the expectation of the life of the widow, and distributing the estate at once. The latter could only be done by consent, but would save the expense of caring for that portion of the estate which is available for the specific and residuary leg-

atees, and avoid liability of loss from keeping .it invested. This result affirms the judgment of the County Court.

We are asked to make an order, that the costs of both parties, including attorneys' charges be paid out of the fund. This is in effect, a proceeding to obtain construction of the· will, and, if in ·equity, we should make such an order. But this is an appeal from the decree of the Probate Court, to the County Court, coming to this court on exceptions. The only power over costs in such a case is that given by R. L. 2280. Under this section, by consent of the appellee, we allow the appellant to recover costs, in this court. Further than this we do not understand we have power over costs and expenses of this litigation.

*Judgment affirmed, with costs to the appellant in this court, ordered to be certified to the Probate Court.*