### In re Estate of Fred O. Copeland

[179 A.2d 475]

November Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 7, 1962

*Elton E. Stevens* and *A. Pearley Feen* for Nettye Robbins Copeland.

*Stanley L. Chamberlin* for Carrie S. Delaney.

*Harvey B. Otterman, Jr.* for Charles H. Merrill and Maude Merrill Worthen Estate.

*Black & Plante* (*Raffaele M. Terino* on the brief) for town of Randolph.

**Barney, J.** Upon appeal from the Probate Court, District of Randolph, the Orange County Court, by its judgment order, interpreted the will of the late Fred O. Copeland. Most of the claimants and named beneficiaries under the will contest that interpretation here.

The will reads as follows:

I give, devise and dispose of all my estate, real and personal, of which I shall die seized and possessed, save what shall be necessary for payment of my debts and funeral expenses, in the following manner:

1. I bequeath the sum of four hundred ($400) dollars to the Town of Randolph, Vermont, in trust to invest the same and to expend the income in the care and embellishment of the "O. B. Copeland Lot No. 10, Section D, in Southview Cemetery" in said Randolph, and the monument and headstones thereon.

2. In the event that my beloved wife, Nettye Robbins Copeland, shall survive me, and in lieu of homestead and all other statutory provisions, I bequeath to her all the contents of our home, except money and securities, and devise and bequeath the residue and remainder of my estate to Gladys Wilson Bundy of Bethel, Vermont, in trust for the following purposes:

A. To permit my said wife to continue to live in our home in Randolph so long as she shall care to do so and shall keep the same in repair, keep well insured and pay the taxes thereon.

B. To convert the rest of my estate into money and safely invest the same as a trust fund and pay the income therefrom to my said wife so long as she shall live and so much of the principal thereof as she shall reasonably require for her comfortable support and the upkeep of our home while she resides therein.

C. If my said wife shall cease living in our home, my said trustee is directed to sell the same and add the proceeds to the said trust fund.

D. After the death of my said wife any part of my estate that has not been converted into money shall be sold, and my trustee shall pay her funeral and burial expenses, and all of my estate then remaining shall be paid to said Town of Randolph in trust to invest the same and use the income toward the support of the Kim-

ball Public Library, such trust fund shall be known as the Cope-land Memorial Fund.

3. In the event that my said wife does not survive me, I direct that all of my estate be converted into money, and I bequeath up to the amount of ten thousand dollars each to Mrs. Carrie S. De-laney, 163 Foster Street, Lawrence, Massachusetts, and to the United Church (Methodist and Baptist) of Randolph, Vermont, if they survive me. If one survive me and the other does not, then both shares shall go to the survivor. If neither survive me these legacies shall lapse.

4. The residue remaining, if any, including the amount of any lapsed legacies, I bequeath to the Town of Randolph, in trust to invest the same and use the income toward the support of the Kimball Public Library.

By this will Fred Copeland has clearly expressed his intentions as to the distribution of his estate. The plan has two aspects: First, if his wife survives him she is to have, under a trust, all the income deriving from his assets, properly invested, together with the right to reasonably invade principal, and, upon her death, the income from the remaining assets is to go to the Kimball Public Library, with the town of Randolph as trustee; second, in the event that his wife does not survive him and require provision for support, Carrie S. Delaney and the United Church are substituted as entitled to the interest she might have taken had she survived, up to twenty thousand dollars, and the residue again goes over, in trust, to the town of Randolph for the benefit of the Kimball Public Library. The simplicity of this disposition has been altered by the actions of certain beneficiaries. The dispute centers around the effect of these activities.

The first action was the filing by the widow of a waiver of the provisions of the will for her benefit and a claim for her statutory share of the estate. Since the Copelands had no children, the widow's interest was determined by 14 V.S.A. §551, as follows:

"The real and personal estate of a decedent, not devised nor bequeathed and not otherwise appropriated and distributed in pursuance of law, shall descend in the following manner:

. . . . . . . .

(2) If the decedent is married and leaves no issue and the surviving spouse does not elect to take a third in value of the real

estate of which the decedent died seized in his or her own right, or waives the provisions of the will of such decedent, such spouse shall be entitled to the whole of the decedent's estate forever, if it does not exceed $8,000.00; but if it exceeds that sum, then such spouse shall be entitled to $8,000.00 and half the remainder. The remainder of such estate shall descend as the whole would if such spouse did not survive. If the decedent has no kindred who may inherit the estate, such spouse shall be entitled to the whole of such estate:"

. . . . . . . . .

It is the position of the widow that the language of this section of the statute has the effect of giving her the whole of the estate because, she says, her husband had no kindred within the terms of 14 V.S.A. §551(3), (4) and (5). Fred O. Copeland was adopted and in fact had no kindred in his adoptive family line. Charles Merrill and Maude Merrill Worthen, a blood brother and sister, agree with the widow's interpretation of the statute that calls the last quoted sentence into play, but say that they are such kindred and should inherit the remainder. The probate court agreed.

Carrie S. Delaney, a named legatee, says that the sentence "The remainder of such estate shall descend as the whole would if such spouse did not survive" means that the widow's resort to her statutory share requires that the will be read as though Nettye Copeland had predeceased her husband, thus bringing paragraph (3) of the will into operation. She says that it is reasonable to equate "elects to take her statutory share" to "does not survive me" because the statute, which Fred Copeland is presumed to have had in mind, seems to equate waiving the provisions of the will and distributing the balance of the estate as though the spouse did not survive.

The Town of Randolph argues, in support of the county court judgment, that the taking of the statutory share by the widow merely accelerates the remainder over for the benefit of the Kimball Public Library. It says that the introductory provision of 14 V.S.A. §551 limits the application of its rules of descent, other than the measure of the widow's statutory share, to the "real and personal estate of a decedent, not devised nor bequeathed and not otherwise appropriated and distributed in pursuance of law." Here, under the will, everything did pass by devise or bequest, excepting only the statutory share the widow elected to take.

In the presence of such a divergence of views one cannot help but feel that the testator's objectives are threatened with total frustration by the activities of various of these claimants. It is the law's concern for the intention of the testator that makes untenable the widow's claim for the whole estate. Her contention would require us to say that the testator without kindred would lose all right to dispose of any of his property by specific bequest or devise if the widow elected to waive the provisions of the will for her benefit. Although the rights of the widow are favored in the law, they do not allow her waiver to reach beyond the provisions of the will for her benefit and destroy otherwise valid testamentary dispositions insofar as the assets of the estate are sufficient to fulfill her statutory rights and the distributions under the will. *In re Peck's Estate,* 87 Vt. 194, 213, 88 Atl. 568. There will certainly be many situations where, by taking a statutory share, a widow may affect or interfere with a testamentary plan because of the financial effect on the estate. See *Jones* v. *Knappen,* 63 Vt. 391, 22 Atl. 630, 14 L.R.A. 293. However, it is quite another thing to say that, as a matter of right, every time there are no kindred a widow takes the whole estate in the very face of specific testamentary dispositions of the remainder of the estate unaffected by the deduction of her share. This is not the law. The share which the widow carves out by force of her statutory election is the only portion of the estate "not devised or bequeathed," upon which 14 V.S.A. §551 can operate. Both the *Jones* case and the *Peck* case underscore this by their requirement that the testamentary pattern be preserved as nearly as possible. The arguments of the brother and sister for a share of the estate, being based on the same premise, also fail.

Carrie Delaney's contention likewise overlooks the fact that the general provisions of 14 V.S.A. §551 deal with intestate estates. The sentence to which she attaches so much importance is not only subject to the general qualification at the beginning of the statute which excludes property devised or bequeathed, but refers to the "descending" of the remainder. "Descent" involves the devolution or taking by succession of intestate property by operation of law. 16 Am. Jur. Descent and Distribution, §1. This meaning is consistent with the expressed purpose of the statute, and, at the same time, inconsistent with the meaning Carrie Delaney would put upon it.

If the provision "the remainder of such estate shall descend as the whole would if such spouse did not survive" were applicable accord-

ing to its meaning, it would support a taking by the widow, rather than Carrie Delaney. This is because that phrase operates to bring the "remainder" under the general rules of descent in cases of intestacy set out in 14 V.S.A. §§2-5. It is not intended to apply to testamentary dispositions, as we have seen.

Other claimants argue that Carrie Delaney is not entitled to take under the will because the provisions of the instrument require that the widow, Nettye, predecease the testator in order for the Delaney and United Church bequests to come into operation. The death of the widow was a condition precedent to the vesting of those bequests, and it did not occur. The dispositive pattern of Fred Copeland provides for legacies for these two interests only in the event that his estate was not going to be drawn upon for the support of his widow. Treating the phrase "does not survive me" as referring to failure to survive in fact and in physical presence is consistent with the whole testamentary plan expressed by the will in its entirety. Nowhere in the will does there appear a design to distribute the estate to both the widow and Carrie Delaney and the United Church. The intent is expressed as an alternative. Respect for the testator's purposes requires such a reading.

True it is that we have case language speaking of the widow's waiver as an equivalent to her physical death. *Jones* v. *Knappen,* 63 Vt. 391, 396, 22 Atl. 630, 14 L.R.A. 293. As language of construction in dealing with ambiguous situations this may be helpful. It is quite another matter to let this language of analogy become so forceful it contravenes the plain language and clear intent expressed in a specific will's provisions for other beneficiaries. To invoke an artificial death here as a consequence of the widow's taking her statutory share would be to enlarge rather than limit the damage to the testamentary plan brought about by the widow's election. This is unsound. 97 C.J.S. Wills, §1289.

The principal issue of this case is very like the one presented in *Jones* v. *Knappen, supra,* 63 Vt. 391. It is the effect of the widow's waiver of the provisions of the will on the remainder which was set up to follow her life interest. Since here the estate in remainder in favor of the Kimball Public Library is the only estate following the life estate in trust for the benefit of the widow, the complex issues of diminuition of shares are not before us. But it can easily be seen

38

from the *Jones* case that waiver of the will does not invalidate the rest of the instrument, and, also, that it is the objective of the Court to so handle the distribution as to preserve the other provisions of the will in the form they would have had, had the widow not waived. We are bound to follow the same course in this case.

■ This will provides for a trust estate for life for the widow, followed by a remainder over in trust for the library. By the authority of the *Jones* case, *supra,* the widow, by waiving the provisions of the will, accelerated the estate in remainder into present enjoyment. It is here that the concept of the waiver as being equivalent to the death of the widow really operates, and makes sense, particularly in this will. More than that, it is consistent with the announced principle that the renounced devises and legacies given by the will to the widow should be applied in compensation of those legatees whom her elections disappoint. *Jones* v. *Knappen, supra,* 63 Vt. 391, 396-7. The residue should be decreed to the library, in trust, under this doctrine, and the county court did so.

This disposition has been complicated by an additional factor. Briefly, as the county court found, the widow entered into a transaction with the officials of the Kimball Public Library whereby, in return for their renunciation of the remainder rights under the will, she would provide in her own will for a cash bequest to the library. An instrument of waiver was drawn up, signed and filed with the probate court. To avoid confusion with the widow's waiver, it is being referred to as a renunciation. After the appeal to county court had been fully heard and the evidence was all in, but before the matter had gone to decree, these same several officials filed an instrument purporting to be a retraction of the original renunciation. The county court treated it as a motion and denied it.

Several issues were argued in connection with this renunciation. The capacities of the parties acting was called into question, as well as the authority of their offices. The timeliness of the withdrawal was questioned, as well as whether a withdrawal was possible at all. The officials concerned conceded that the renunciation was ill-advised. We agree.

■ Passing the other issues and going directly to the renunciation simplifies the matter. Looking to the substance of the transaction,

it was neither a renunciation nor a waiver. The objective was to convert a gift of income in trust into an eventual gift of cash. As was said in a like situation in *In re Meade's Estate.* 227 Wisc. 311, 277 N.W. 694, 700, 279 N.W. 18, 116 A.L.R. 1127, the gift was not renounced but rather recognized by the attempt to modify the distribution contrary to the express wishes of the testator. This would be of at least doubtful validity in the case of an ordinary testamentary trust. 96 C.J.S. Wills, §1111. When the transaction relates to that favorite of the law, a charitable trust, resort to the courts for authority is a prerequisite, and, ordinarily, termination of a charitable trust contrary to the intent of the testator will not be permitted. 4 Scott, Trusts, §367A (2d ed. 1956). Every policy favoring the testator's intent, supporting the creation of the charitable trust and enforcing the fiduciary responsibilities of the officers and trustees underscores the propriety of permitting the purported renunciation to be withdrawn. Nor has anything by way of prejudicial change of position been shown to bar withdrawal as inequitable. See *In re Cranstoun,* (1949) Ch. 523; 1 Scott, Trusts, §361, at p. 281.

Apparently the county court treated the purported renunciation by the library and the town as a nullity. This was undoubtedly sound, but, in view of our holding that it was proper for the renunciation to be withdrawn, we need not pass on that question.

*Judgment affirmed; to be certified to the Probate Court for the District of Randolph.*

**Smith, J.,** dissenting. I regret that my views of the instant case compel me to dissent from the opinion of the majority of the Court. My dissenting views are based for the most part upon those sections of the opinion which relate to the effect upon the will by the widow's election to take under the statutes as against the provisions in the will made for her benefit, as well as the effect upon the estate here involved by the waiver and disclaimer filed by the trustees of the Kimball Public Library on the residue of the estate.

I agree with the majority that a taking against the will by a surviving spouse, as the widow did here, does not operate to render the estate intestate, or destroy the sufficiency of the will in other respects as to the remainder of the property, but what such election does do is to blot out all the provisions of the will for the benefit of the spouse

who had made the election to take under the statutes. *Jones* v. *Knappen,* 63 Vt. 391, 22 Atl. 630, 11 L.R.A. 293.

A testator is presumed to know that a widow's statutory rights are paramount, and that she may take against the will. Although such presumption hardly need be relied upon when, as here, the testator evidenced his actual knowledge of such statutory rights by providing that the life estate that he bequeathed to her was "in lieu of homestead and statutory rights." It is also the general rule in most jurisdictions that upon the election of the spouse to take under the statutes the will is construed as if it contained no provision for the surviving spouse and distribution is made as if he or she died. 97 C.J.S. Wills §1289, p. 154-155. *In re Diston's Estate,* 257 Pa. 537, 101 Atl. 804, L.R.A. 1918B, 62; *Sherman* v. *Flack,* 283 Ill. 457, 119 N.E. 293, 5 A.L.R. 456; *In re Kern's Estate,* 296 Pa. 348, 145 Atl. 824, 66 A.L.R. 1342; *In re Vance's Estate,* 141 Pa. 201, 21 Atl. 643, 12 L.R.A. 227; *In re Dulles Estate,* 156 Pa. Super. 405, 41 A.2d 52. And the testator is presumed to know that a widow's election to take under the statutes is equivalent to her death for the purposes of distribution of his estate. 14 V.S.A. §551 (2) provides that if the surviving spouse elects to take under the statutes, and waives the will of the decedent, "the remainder of such estate shall descend as the whole would if such spouse did not survive." The opinion of the majority is that this provision, because it is under the subtitle applying to property "not devised or bequeathed" applies only to the taking of intestate property by operation of law. Without contending that this view is incorrect I submit that it is at least an indication of the statutory view of the status of a surviving spouse who elects to take against the will of the deceased matrimonial partner, and which should be considered by this Court in determining the question presented. A less narrow interpretation of the word "descends," which the majority uses in its strict common-law signification, might be employed if the legislative intent was found to be to apply the statute in cases of both testacy and intestacy. *Mitchell* v. *Blanchard,* 72 Vt. 85, 87, 47 Atl. 98.

But laying the statute just quoted to one side, I believe that the same practical result is reached under the holding in *Jones* v. *Knappen, supra.* The blotting out of all the provisions of the will in favor of the widow upon her election to take under the statute is in effect treating her in all respects as if she had predeceased her husband,

or, stating it another way, it is as if she had no existence as far as interpreting the will is concerned. Every part of the will which has as its purpose the advantage of the widow is erased from it by her act, and is not to be considered in interpreting the remaining provisions.

The will of the testator provided for the specific bequests to Mrs. Carrie Delaney and the United Church in the event only that his wife did not survive him. The obvious intent of the testator was to hold his estate together until the death of his wife so that she might enjoy her life estate from it without diminution of any of its principal. It was to give to her the benefit of the income from all of his property, and even principal, if need be, for her support and enjoyment for the remainder of her life. Because there could be no way of telling how long his widow might survive him, nor what part of both income and principal might be used up during her lifetime, he made no specific bequests to others that he might wish to share his bounty, but only provided that the residue left, after the completion of the life estate, would go to the Library.

The provision that the bequests to Mrs. Delaney and the United Church should go into effect "in the event that my wife does not survive me" was purely for the benefit of the wife in the event that she took the life estate provided for her under the will. It was not for the benefit of the Library. The Library, by the testator's expressed intention, was to have only the residue remaining (1) after the depletion of the life estate given to the widow, or (2) after the payment of the specific legacies to Mrs. Delaney and the United Church. Residuary gifts are from their nature ordinarily the lowest in rank; no other can be interfered with for the sake of benefiting them. *In re Vance's Estate,* 141 Pa. 201, 21 Atl. 643, 644, 12 L.R.A. 227.

It is my view that the testator may be presumed to have known that if the widow elected to take under the statute she would blot out all provisions in his will for her benefit, so that as far as his will was concerned it would be as if she did not survive him.

In my opinion the bequests to Mrs. Delaney and the United Church should be decreed. I believe it worthy to note that the amount to be distributed in the Copeland estate, after deducting the amount taken by the widow under the statutes, would still leave a residue after such bequests were made.

I cannot treat the waiver filed by the trustees of the Kimball Public Library in the probate court on December 17, 1959 in as cursory a manner as have the majority. It was not given by the trustees of the Kimball Public Library to convert a gift of income from Mr. Copeland's estate to a gift of cash from the same source. The library was to receive nothing from the Copeland estate by reason of the waiver. It is true that upon their approaching Mrs. Copeland relative to their intentions in the matter, she agreed to leave a sum of money to the library upon her decease, and so provided in her will, but this is not an attempt to modify the distribution of an estate under the will, as in *Re Meade's Estate,* 227 Wisc. 311, 277 N.W. 695, 279 N.W. 18, 116 A.L.R. 1127, cited by the majority, for here the library would receive nothing from the Copeland estate by reason of the waiver.

Entitled Release and Waiver, this waiver was not attempted to be withdrawn until August 18, 1960. During the intervening period of seven months the probate court hearing was concluded, findings of fact were made, and a decree of distribution issued by the probate court. Under this decree of distribution (and in part, at least, because of the waiver of the residuary trust by the library) the remainder of the estate was decreed to Charles Merrill and Maude Merrill Worthen, brother and sister of the late Mr. Copeland, who became appellees in the county court proceedings.

The release and waiver was given by the trustees of the Kimball Public Library. Under 22 V.S.A. §143 (a) such library trustees "have full power to manage such public library, and to receive, control and manage property which shall come into the hands of such town or village by gift, purchase, devise or bequest for the use and benefit of such library." Under this unlimited grant of power relative to the affairs of the library under their control, the acts of such trustees are the acts of the library. It is the library that is the beneficiary, or cestui que trust, of the residue of the Copeland estate under the trust set up in the will. The beneficiary of a trust can waive the provisions of a will for his benefit. *Bradley v. New Hampshire,* 100 N. H. 232, 123 A.2d 148, 151. A valid trust does not exist if the cestui que trust, when informed of it, clearly and unequivocally rejects or renounces its benefits. Such renunciation or disclaimer relates back to the date of the gift with the result that title to the property which is the subject matter of the gift does not pass to the beneficiary. 89

C.J.S. Trusts, p. 836. *Bradley* v. *New Hampshire, supra.* See 1 Scott on Trusts, §36.1. The right to disclaim the benefits of a trust exists in the cestui que trust even though the trust be one for a charitable purpose. See *Bowden* v. *Brown,* 200 Mass. 269, 86 N.E. 351; *In re Opinion of the Justices,* 237 Mass. 613, 131 N.E. 31.

The opinion of the majority does not pass upon the validity of this waiver by the trustees of the library, although in my view this is essential to a proper determination of the question here presented. For if such waiver was a nullity, as the lower court determined, and the majority suggests may be correct, then the validity of the attempted renunciation by the library trustees upon which the majority opinion depends, would not be presented. If the waiver was a null and void act, there would be nothing of legal effect that would have to be rescinded. It therefore seems by passing upon the propriety of the withdrawal of the waiver the majority does not recognize that there was a waiver or renunciation of such legal effect that a withdrawal was necessary to allow the judgment below to be affirmed.

In my view, however, the question of the withdrawal of the waiver is not before this Court. The library trustees who gave the waiver, and then attempted to withdraw it some seven months later, are not parties to this appeal, this, although they are the very ones upon whom the burden rests of showing that a timely and proper withdrawal of the waiver given by them was made. As far as the record before us indicates, the library trustees remained content with the lower court's dismissal of their attempted withdrawal of their waiver.

The Trustees of Public Funds of the Town of Randolph who seek to uphold the withdrawal and reverse the lower court's ruling on the matter, are not the beneficiaries under the trust or the cestui que trust under the will. Their only function under the statute, 24 V.S.A. §2431, is the "charge and management of money held by a town in trust." Until a trust has been established they have no interest in the matter. Here there is no trust in existence. The waiver or disclaimer by the cestui que trust related back to the date of the gift with the effect that the title to the property, which was the subject matter of the gift, never passed, and no trust came into existence in which the Trustees of Public Funds had an appealable interest as administrators of the same.

The document which the trustees of the Kimball Public Library filed with the probate court, Randolph District, on December 17, 1959,

was entitled a waiver by the signatories to it, and by its express terms "any and every right and claim" against the estate of Copeland is waived. A right once waived cannot be reclaimed. *Johnson* v. *Tuttle*, 108 Vt. 291, 187 Atl. 515, 106 A.L.R. 1291.

If the document so filed be considered a renunciation, as the majority have termed it, we are faced with the fact that the probate court made its decree of the residue of the estate in favor of the brother and sister of Mr. Copeland upon such renunciation, then undisputed and in full force and effect. By reason of such decree, based upon this renunciation, the brother and sister of the deceased Copeland became possessed of a legal right which was a triable issue. This right they have defended in both the county court and this Court. The attempted renunciation, at so late a date, is such a reversal of attitude on the part of those who gave the original renunciation as to adversely affect the triable interest of the blood brother and sister and should be prevented. *In re Johnston's Will*, 164 Misc. 469, 298 N.Y.S. 957.

In effect, what we have here is a waiver of all rights that he might possess under a will by one of the legatees. Because of this waiver, certain rights are created which did not before exist, and in which rights certain parties now find they have a triable interest. After having gone to the expense and labor of advocating their various interests through several contested court proceedings they are then confronted with a belated second thought on the part of the original waiving legatee to his waiver, and to destroy the very rights which his original action brought into existence. I cannot conceive it to be justice, or within the law, to allow this to be done.

I would sustain the validity of the waiver given by the library trustees which would leave the residue of the Copeland estate to pass under the laws of descent and distribution. It would then become necessary for the Court to pass upon the conflicting claims of the widow and the blood brother and sister, which have been briefed here, to reach a final judgment in this matter.