## In re Estate of Alice White

[ 238 A.2d 791 ]

December Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 6, 1968

*Waldo C. Holden* and *Williams & Williams* for appellant Adelaide Eaton.

·· *Dwight W. Miller* for trustee, appellee.

*Eugene V. Clark* for Dorothy Towart.

**Barney, J.** The remaining *corpus* of the trust created by the will of Alice White became distributable on the death of her surviv-

ing husband, Clarence White, the life tenant. The governing provision of her will, Item 5, read:

5. All the remainder of the *corpus* of said trust, including therein (in case Eleanor Cushman does not survive my said husband) the $5,000. next above.bequeathed, I give, devise and bequeath, subject to the power of appointment below given to said Clarence, to Frederick W. White and Dorothy W. Towart in equal shares free of all trusts, and so to them and their heirs forever *per stirpes* and not *per capita*.

Frederick W. White and Dorothy W. Towart were the adopted children of the Whites. At the time of the execution of the will in 1944, Dorothy was already married, and Frederick was to get married in a little over two weeks. Alice died in 1949, and Frederick died in 1951, survived by his father and his widow, now Adelaide Eaton, a party in these proceedings. There were no children born to Frederick and Adelaide. The death of Clarence in 1965 precipitated this controversy. Dorothy survives and is also a party in this action.

Reference to other portions of the will, an exhibit in the case, were made during the course of the litigation. A summary of its significant provisions may be helpful. After a conventional opening paragraph providing for payment of debts and administration expenses, paragraph two gave a named beneficiary, Eleanor Cushman, $5,000. "if she survives me."

The third paragraph put the remaining assets in trust as a life estate for Clarence, giving him three-quarters of the income, and dividing the remaining one-quarter between Frederick and Dorothy. It also provides that if either child predeceases Clarence, the income share shall then be paid "to or for the benefit of his issue, if any, or if not, to his surviving spouse." If there was no such issue or spouse, then such share was to be paid "to the survivor of my two children, or his issue or spouse as the case may be."

The fourth paragraph was introduced by the phrase, "On the death of said Clarence W. White," and gave Eleanor Cushman an additional $5,000 at the death of Clarence, "if she be then living." This paragraph and the fifth, already quoted, were both subject to a power of appointment given Clarence in paragraph six.

The power of appointment authorized Clarence, by will, to give a sum not to exceed $10,000. to some appropriately charitable corpora-

tion or corporations. Insofar as any or all of that sum was not appointed, that money was to "become a part of the share of my children above provided for in Item 5 of this my will." The balance of the instrument provided for the appointment of trustees and executors, and revoked previous wills.

The initial problem which must be dealt with can be briefly stated. Dorothy claims that the language of the will requires that the remainderman survive the life-tenant in order to share in the distribution of the trust *corpus*. Since Frederick did not survive, she claims his share. This is opposed by Adelaide, Frederick's widow, who says she is entitled to take Frederick's portion, either because there was no such survivorship requirement to bar the passing of the share to her husband, or because she has standing under the will as an heir of Frederick. Thus, the critical opening question requires us to determine whether the remainder was vested or contingent.

The probate court found the will required a taker to survive the life tenant, and Dorothy was decreed the entire residual estate. She took half as remainderman in her own right, and half as the sole surviving member of a class of beneficiaries. This disposition was appealed to county court for a hearing *de novo,* where the same result obtained. Settlement of the legal issues is now sought here.

■ It is indisputable that the law of Vermont favors vesting. The language of *Weatherhead* v. *Stoddard,* 58 Vt. 623, 629, 5 A. 517, 519, that "no estate will be held contingent, unless very decided terms of contingency are used in the will, or it is necessary to hold the same contingent in order to carry out the other provisions or implications of the will," re-echoes through our cases down to *Wyman* v. *Kinney,* 111 Vt. 94, 99, 10 A.2d 191, 128 A.L.R. 298, and is still the law. We take it to be unchallenged that had paragraph five read "to them and their heirs forever" omitting *"per stirpes* and not *per capita,"* the shares of both Dorothy and Frederick would clearly have vested at the death of their adoptive mother, Alice. This would have been a conventional vested remainder, with enjoyment postponed by an intervening life estate. *Jones, Admr.* v. *Knappen,* 63 Vt. 391, 394, 22 A. 630, 14 L.R.A. 293.

We look in vain for plain words suggesting or requiring survivorship as a contingency. There is no limitation to "living" children, as in *Wheeler* v. *St. Johnsbury,* 87 Vt. 46, 49, 87 A. 349, which did not bar vesting, but gave an estate subject to divestment. There is

no "if living, otherwise to" as in *In re Field's Estate,* 101 Vt. 242, 249, 143 A. 280. The "as may be living" phrase of *In re Estate of Valiquette,* 122 Vt. 350, 365, 173 A.2d 832, 839, was not employed. The expression "or to the survivor of them," clearly expressive of the result sought by Dorothy, is not in the paragraph. *In re Boardman Estate,* 126 Vt. 77, 80, 223 A.2d 460, 462. Yet, in other parts of the will, the testatrix used the substance of all these expressions to accomplish appropriate contingent consequences.

The appellees claim that disposition of the remainder was introduced by the clause, "On the death of said Clarence W. White." This overstates the case. This expression introduces only paragraph four, containing a contingent bequest to "Eleanor Cushman, if she be then living." As an *indicia* of contingency, its effect is limited to that paragraph, already contingent, and does not reach paragraph five, which sets out the estates in remainder.

The appellees suggest that other parts of the will support their contention that the remainder to Frederick was contingent. Among other things, they point to the clearly spelled out gift of income over to spouse and issue in the event that Frederick predeceased the life tenant. The complete answer to that argument is that if paragraph five does, in fact, give a vested remainder to Frederick, none of the careful spelling out of rights of spouse and issue is necessary at all with respect to it. Furthermore, gifts of the income from a *corpus* to the remaindermen tend to confirm an intent to make the remainder vested. *In re Robinson's Estate,* 90 Vt. 328, 333, 98 A. 826.

Turning now to the phrase *"per stirpes* and not *per capita,"* the appellees argue that it is incongruous to apply it to "heirs" when that word is operative as a word of limitation, as it is when it conveys a fee. Therefore, they say, "heirs" must be a word of purchase here, identifying particular takers. If "heirs" is a word of purchase, it must represent a class gift, and a class gift usually requires survivorship. But the words in 57 Am.Jur. "Wills," sec. 1258, p. 831, are apt: "(S)urely, in every case the question is whether the legal class-gift concept embraces the testator's purpose, not whether the testator has embraced that concept." Thus we are led full circle to the determination of the existence of an intent to impose a survivorship condition, if we are to uphold the ruling below. And we are com-

pelled to point out that the conversion of "heirs" to a class could be so simply accomplished by making "and their heirs" read "or their heirs." *Wyman* v. *Kinney, supra,* 111 Vt. 94, 101-102, 10 A.2d 191.

■ Furthermore, the assumption that the use of *"per stirpes* and not *per capita"* in the present context could have no other consequence than to convert a word of limitation into a word of purchase, must be said to be not proved. The function of the phrase is to require that successive generations of heirs take by right of representation, and has little to do with any survival requirement. It is a general rule that a devise to heirs or next of kin will be construed to accomplish a *stirpital* distribution where possible. *In re Estate of Valiquette, supra,* 122 Vt. 350, 364, 173 A.2d 832, 839. It would appear here that the testatrix, in order to make doubly sure that the residual estate would be shared evenly between any family of Frederick and any family of Dorothy, added the *"per stirpes"* phrase. It does serve to rebut the statutory *"per capita"* distribution at the level of grandchildren. 14 V.S.A. sec. 551(1); *In re Martin's Estate,* 96 Vt. 455, 457, 120 A. 862.

■ The phrase must also be acknowledged to be unnecessary, if vesting occurred. But it is not repugnant nor inconsistent to that concept, but merely redundant: This being so, this case becomes one governed by the usual rule, and the remainder vested in Frederick at the death of his mother, with no possibility of defeasance.

This disposition of the case makes it unnecessary to pass upon the other questions raised in the appeal.

*The judgment of the county court is reversed and the cause is remanded for the preparation of a new decree not inconsistent with the views expressed in the opinion. Let the result be certified.*