WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee Under Trust Agreement with Robert R. M. Carpenter, dated September 22, 1930 as Supplemented, Petitioner,

v.

R. R. M. CARPENTER, Jr., et al., Respondents.

Court of Chancery of Delaware, New Castle.

Jan. 28, 1974.

Robert H. Richards, E. Norman Veasey and Richard G. Elliott, Jr., Wilmington, for petitioner.

Edward W. Cooch, Jr., and Bonnie H. Sheer, of Cooch & Taylor, Wilmington and Richard Carvell, Chestertown, Md., for respondent Louisa d'A. Carpenter.

Charles S. Crompton, Jr., and James F. Burnett, of Potter, Anderson & Corroon, Wilmington and Kenneth W. Gemmill, of Dechert Price & Rhoads, Philadelphia, Pa., for respondents R. R. M. Carpenter, III, Kaye Carpenter Coggins, Wilmington Trust Co., Trustee of the Estate of Kemble duPont Carpenter, Keith P. Carpenter, Renee K. Lickle, Margaretta K. Stabler, Nancy K. Lickle, Carol McCoy and Leslie K. deBraux.

S. Samuel Arsht, of Morris, Nichols, Arsht & Tunnell, Wilmington, for respondent The Carpenter Foundation, Inc.

Kent Walker, State Sol., for W. Laird Stabler, Atty. Gen. of the State of Delaware.

MARVEL, Vice Chancellor:

Robert R. M. Carpenter, the settlor of the trust involved in this case, which he caused to be created on September 22, 1930, therein provided that his wife Margaretta was to receive the income derived from such trust during her lifetime and

that upon the death of Margaretta such income was to be paid to the settlor for life, if then living. The provisions of such trust further provided that upon the deaths of both the settlor and his wife Margaretta (in the event that the trust should still be in existence at the death of the survivor of the settlor and his wife) that the income derived from such trust was to be divided into four equal parts and paid over to the settlor's four children, the share of any then deceased child to be paid to his or her lawful issue. The trust went on to provide that it was to continue in existence until the death of the last survivor of the following persons, namely the settlor, his wife Margaretta, his brother-in-law Pierre and Pierre's wife Alice. The last survivor of such named persons proved to be Margaretta duPont Carpenter, the life tenant at the inception of the trust, who died on May 31, 1973, thus bringing the trust to an end. On such date each of the four children of the settlor was alive and entitled to his or her own one-fourth remainder interest in the trust property here in issue.

Paragraph 5 of subdivision A of the trust in issue provides as follows:

"Upon the termination of the trust hereby created, as hereinabove provided for the TRUSTEE SHALL divide the then existing corpus of the trust estate into as many equal parts or shares as there shall be children of the SETTLOR then living and children dead represented by issue then living and one of such parts or shares shall be paid over and delivered to each of such children then living and/or each issue or group of issue representing a child then dead, absolutely and in fee simple and free and dis-

charged from any and all trusts whatsoever. Any of such parts or shares so paid over to more than one issue representing a deceased child of the SETTLOR shall be equally divided among such issue."

On February 24, 1947, the settlor, with the evident intent of avoiding the possibility of the reversion [1] of trust property to him, his heirs, executors or assigns in the event of there being no one in being at any time entitled to take under the terms of the trust, executed a directive which altered the September 22, 1930 trust by providing that upon the happening of such postulated event, such property was to be paid over to a designated charitable trust, thereby avoiding the possibility of a resulting trust, such directive [2] providing that:

"* * * if at any time there shall be no one entitled, under the terms of the deed of trust, to receive the principal then held thereunder, or the income from such principal, thereupon such principal shall be paid over absolutely to THE CARPENTER FOUNDATION, Inc., it being my intention that, no matter what contingencies occur, no part of the principal of the trust, or of the income from such principal, shall ever revert to me or my heirs, executors or administrators. The aforesaid direction shall not in any way effect the life estate reserved to me in paragraph 3 of sub-division (A) of said deed."

On June 7, 1973, following the death on May 31, 1973 of their mother, who was, of course, settlor's wife, irrevocable disclaimers, executed on the same date, were received by petitioner from two of the settlor's children, namely Irene Carpenter

---

[1]. The purpose behind such directive apparently had its genesis in the ruling in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, as to the taxability of reversionary interests, an area which was later expanded by the rulings in Commissioner of Internal Revenue v. Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288, and Spiegel's Estate v. Commissioner of Internal Revenue, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330.

[2]. On April 16, 1947, the settlor executed another directive which altered the September 22, 1930 trust agreement so as clearly to set forth his intention that trust income as well as principal was to be paid over to the Carpenter Foundation upon the happening of the contingency postulated in the February 24, 1947 directive.

Draper and R. R. M. Carpenter, Jr., in which disclaimers it was separately stated that each such child did:

"* * * hereby irrevocably and absolutely disclaim, renounce, and forever extinguish any interest I might otherwise have in any principal and income of the above trust—PROVIDED, HOWEVER, that if it shall be finally determined by a court of competent jurisdiction that the consequence of my disclaimer is other than to entitle my * * * children living at my mother's death to receive such interest by operation of law, just as if I had predeceased my mother, then this instrument shall be null and void for all purposes as if it had never been executed by me."

In the brief period between their mother's death and their execution of such renunciations and disclaimers, neither Irene Carpenter Draper nor R. R. M. Carpenter, Jr., received either income or principal from the trust in issue as a result of their mother's death.

Named as respondents to this action are the four children of the settlor, the grandchildren of the settlor born of his two children who have conditionally disclaimed their interest in the trust remainder in issue, and The Carpenter Foundation, Inc., a charitable institution named by the settlor on February 24, 1947, and April 16, 1947 to receive the trust property here in issue "* * * if at any time there shall be no one entitled * * * to receive the principal * * *" of such trust "* * * or the income from such principal * * *", it being the settlor's express intent, as stated in his February 24, 1947 amendment to the trust here in issue that "* * * no matter what contingencies may occur, no part of the principal of the trust or of the income from such principal shall ever revert to me or my heirs, executors or administrators." Also, inasmuch as this litigation involves the contingent interest of a charitable trust in the trust property here involved the Attorney General of the State

of Delaware has entered his appearance through a deputy. The Foundation and the respondent children of Irene Carpenter Draper and of R. R. M. Carpenter, Jr., the renouncing trust beneficiaries, have moved for judgment on the pleadings. Of the other named respondents only Louisa d'A. Carpenter has appeared and submitted herself to such action as the Court may deem appropriate.

This in the opinion of the Court on the question as to whether or not as a result of the renunciations and disclaimers of Irene Carpenter Draper and R. R. M. Carpenter, Jr., that the trust property, which would otherwise have become the sole property of such trust beneficiaries, has, under the terms of the trust in issue, become the property of such disclaimers' children as effectively as if such renouncing trust beneficiaries had died. In the event that the Court should find that the disclaimers in question failed to accelerate the coming into being of the trust interests of the respondent grandchildren of the settlor, then the renouncing respondents in their very disclaimers ask that such documents be declared inoperative and void.

The moving respondents argue that the relief sought by them is a logical extension of the ruling made in Wilmington Trust Company v. Carpenter, 31 Del.Ch. 411, 75 A.2d 815, in which Margaretta duPont Carpenter, the wife of the settlor here involved, on January 10, 1950 renounced and disclaimed her interest in the income for life derived from a trust created by her also on September 22, 1930 for her husband's immediate benefit for life, such trust going on to provide that in the event of his prior death that trust income was to be paid to her for life. Mr. Carpenter's death occurred on June 11, 1949, and, as noted above, Mrs. Carpenter's renunciation of her right to receive trust income was executed on January 10, 1950.

The Court in the cited case held that the disclaimer of her right to trust income "* * * clearly and unequivocally indi-

cated Mrs. Carpenter's intent and effectively terminated her life interest in the trust * * *", the Court going on to hold that expressions used in wills, such as "after the death of" or "then living" do not necessarily evince an intent at odds with that of acceleration " * * * upon renunciation by the donee of the prior interest.", Equitable Trust Company v. Proctor, 27 Del.Ch. 151, 32 A.2d 422, and see Wilmington Trust Company v. Jobling, Del.Ch., C.A. 2052, December 14, 1965. The precise holding of the Court in the case of Wilmington Trust Company v. Carpenter, supra, was that the life tenant, Margaretta duPont Carpenter, had the power by renunciation to accelerate the payment of trust income to her children as effectively as if she had in fact died, the principle of renunciation and consequent acceleration arising out of the presumed intention of the testator or trustor, there being no distinction between vested and contingent remainders in the application of such principle, Scotten v. Moore, 5 Boyce 545, 93 A. 373.

Counsel for the Carpenter Foundation, Inc. has no quarrel with the Delaware cases relied on by the respondent grandchildren of the settlor which have to do with the acceleration of a subsequent estate as a result of a renunciation of the interest of a life tenant, the possessory rights of subsequent beneficiaries being postponed merely for the benefit of prior life tenants, but contends that such cases are inapposite in the situation found here, one in which remainder interests have allegedly vested. Counsel for the Foundation goes on to contend, and the Attorney General agrees, that as a consequence of the disclaimers and renunciations of R. R. M. Carpenter, Jr., and Irene Carpenter Draper a resulting trust would have come to pass as to their shares of trust corpus had it not been for the 1947 trust directives providing for the gift over to The Carpenter Foundation, Restatement of the Law of Trusts, Second, §§ 411 and 412. Counsel for the Foundation further argues that having renounced and disclaimed their vested interests in the

corpus of the trust here in issue, the attempt of Irene Carpenter Draper and R. R. M. Carpenter, Jr., to recover their disclaimed property, in the event the principle of acceleration is not applied, must fail, Bank of Delaware v. Clark (Del.Ch.), 249 A.2d 442.

■ Counsel for the moving respondents in turn argues that there is no logical reason why the theory of disclaimer and renunciation should not apply to the renunciation and disclaimer of a right to a remainder in the same manner as it has been applied to the renunciation and disclaimer of a life estate or less. In support of such contention reliance is placed on the case of In re Page, 113 N.J.Super. 582, 274 A.2d 614, and the established principle that a devisee or legatee cannot be compelled to accept a devise or legacy, Vol. I Bogert on Trusts §§ 171 to 173, and Vol. 1 Restatement, Trusts § 36 par. c. In the cited case, the testator provided for a life estate for his wife with remainders over in equal shares to his two daughters, or, in the event either should be dead at the termination of the life estate, then to such persons as his daughters should appoint, and in default of appointment to such daughters' issue.

After the death of their mother the two remaindermen daughters promptly renounced their remainder interests in the trust, thereby seeking to accelerate the interests of their issue, and the named trustee sought instructions. The Court found that the daughters' renunciations, both of which had been filed within three weeks of their mother's death, had been timely, and that it was of no significance that the testator had provided only contingent interests for his daughters' issue, citing Scotten v. Moore, supra, and quoting from Simes on Future Interests (1936 ed.) §§ 756 and 757. The cited case further holds that a remainderman may await the termination of a prior estate before accepting or rejecting benefits conferred upon him, as was done in the case at bar. The New Jersey Court went on to state that the principle of renunciation applies even in

situations in which a life tenant's right to renounce and disclaim has not been recognized by the trustor or testator, and phrases fixing the time of taking, such as " * * * after the death of (the life tenant) * * *" are used in a will or trust instrument. The Court then stated:

"To ask how a testator would have disposed of his property if he had anticipated that his wife might reject or surrender a life estate is essentially like asking how a testator would have disposed of his property if he had anticipated that his daughters might disclaim remainders provided for them in his will. In both situations the real inquiry is addressed to the testator's intent."

■ And while counsel for the Foundation points out that had Irene Carpenter Draper and R. R. M. Carpenter, Jr., died following their mother's death and before executing their renunciations, the trust property then allocable to them would have become part of their respective estates, the point is they did not die prior to the execution and delivery to the trustee of their renunciations. Furthermore, their father's trust provided for a more remote taking, namely by the disclaimers' children and the principle of renunciation calls for an assumption of death. Finally, a renunciation may be made before or immediately after the termination of a preceding estate, In re Estate of Page, supra. In short, in light of the settlor's clearly expressed intention to benefit his wife, his children and grandchildren, I am satisfied that the contingent gift over to The Carpenter Foundation, Inc. was to take place in the words of the settlor only "* * * if at any time there shall be no one entitled, under the terms of the deed of trust to receive * * *" trust principal and income " * * * it being my intention that no matter what contingencies occur, no part of such principal of the trust, shall ever revert to me or my heirs, executors or assigns."

Thus, in subdivision A of his September 22, 1930 trust indenture, the settlor pro-

vided in paragraph (4) that if any of his four children "* * * should die without leaving lawful issue surviving, the share of such net income of any child so dying shall be equally distributed among the remaining children and the lawful issue of any of them that shall have died leaving such issue, as hereinabove provided for."

■ And while counsel for the Foundation points out that a factor in the decision reached in the case of In re Estate of Page, supra, was the avoidance of even a partial intestacy, a factor which does not exist in the case at bar because of the gift over to the Foundation, I am nonetheless of the opinion that once it has been made clear, as it has been here, that a settlor or testator intends that property placed in trust by him should inure to the benefit of his wife, his children and grandchildren under the terms of a trust instrument or will then I fail to find any distinction between the renunciation of a remainder as opposed to that of a life estate. In short, the intention of the settlor is paramount unless it violates an established rule of law such as the rule against perpetuities. Compare Bird v. Wilmington Society of Fine Arts, 28 Del.Ch. 449, 43 A.2d 476. Here, I am satisfied that the settlor had an intention of having the trust property here in issue paid over to the family charitable trust only in the remote contingency that upon the termination of the trust there should be no member of his immediate family with trust interests, namely his wife, children, and grandchildren alive and entitled to receive trust income or principal under the terms of the trustor's indenture of September 22, 1930 as supplemented by the settlor's directives of February 24 and April 16, 1947.

In short, I find the reasoning of the case of In re Estate of Page persuasive here. Compare Keinath v. Commissioner of Internal Revenue (C.A.8), 480 F.2d 57. On the other hand, the case of in re Estate of Copeland, 123 Vt. 32, 179 A.2d 475, is concerned with a situation in which a widow would have defeated her deceased hus-

band's intent had she been permitted to renounce her testamentary rights and thus elect, on the fiction of her artificial death, to then take her statutory share of her husband's estate and thus frustrate his intention. Next, the case of In re Chandler Estate (Pa.Orphans Ct.), 18 Pa.D. & C. 2d 783, was based on a special Pennsylvania statute, while the case of In re Waring, 293 N.Y. 186, 56 N.E.2d 543 involved a purported renunciation of an insignificant part of a large estate. More to the point, the petition in issue was found to have been filed by persons not having a proper interest in the matter in issue, namely those who would have taken had the purported renunciation of a relatively small bequest of $600 been recognized.

I conclude that the renunciations and disclaimers of Irene Carpenter Draper and R. R. M. Carpenter, Jr., effectively accelerated the remainder interests of their respective children who thus by operation of law thereby have succeeded to their parents' remainder interests just as if such parents had predeceased their mother.

Having reached the above conclusion, there is no need to consider the second point here in issue, namely the terms of the disclaimers in issue which provide that they are to be declared null and void if the Court should find that they have failed to accomplish their declared purpose.

On notice, an appropriate order may be submitted.